243 P.3d 936 (2010)
STATE of Washington, Respondent,
v.
Leonard Jan JOHNSON, Jr., Appellant.
No. 39418-9-II.
Court of Appeals of Washington, Division 2.
November 24, 2010.
*937 Kathryn A. Russell Selk, Russell Selk Law Office, Seattle, WA, for Appellant.
Kimberley Ann Demarco, Pierce County Prosecutor's Office, Tacoma, WA, for Respondent.
VAN DEREN, J.
¶ 1 Leonard Johnson, Jr. appeals his conviction for unlawful possession of a controlled substance, to wit: cocaine. He contends that the prosecutor committed prosecutorial misconduct by misstating the law regarding the presumption of innocence and the reasonable doubt standard. He also contends that defense counsel's failure to object to these arguments constituted ineffective assistance of counsel. Consistent with our holding in State v. Venegas, 155 Wash.App. 507, 523 n. 16, 525, 228 P.3d 813 (2010), we hold that the prosecutor's closing argument misstating the reasonable doubt standard and undermining the presumption of innocence was erroneous and constituted misconduct so flagrant and ill-intentioned that it could not have been cured by objection and an instruction. Accordingly, we reverse Johnson's conviction and remand for a new trial.

Facts
¶ 2 On May 4, 2008, at approximately 9:43 pm, Tacoma Police Officer Jeff Thiry was on routine patrol when he observed a man, later identified as Johnson, riding a bicycle on a sidewalk without a helmet. Because both riding a bicycle without a helmet and riding a bicycle on a city sidewalk are civil infractions, Thiry decided to pull Johnson over. Without activating his siren or lights, Thiry pulled his patrol car to the side of the road so that Johnson was riding toward him. According to Thiry, as he began exiting his patrol car, Johnson made eye contact with him, turned his bicycle into a Safeway store parking lot, and quickly pedaled away.
¶ 3 Thiry testified that he activated his patrol car's emergency lights and siren, used his radio to notify dispatch that Johnson was trying to "elude" him, and began pursuing Johnson. 2 Report of Proceedings (RP) at 27. Johnson led him on a chase involving two parking lots, three streets, multiple changes of direction; the pursuit caused Thiry to drive over a curb and on a sidewalk in order to keep pace. Thiry did not issue any commands to Johnson over his public announcement system during this pursuit. Johnson eventually struck a car, which was parked perpendicularly across a sidewalk, fell off his bicycle, and began to run.
¶ 4 Thiry continued to chase Johnson on foot for approximately one quarter of a block before deploying his electronic patrol device (stun gun), striking Johnson in the back. Johnson continued to run so Thiry increased *938 his speed and tackled him. At this point, Thiry gave Johnson verbal commands, "`Stop, police; stop resisting; you're under arrest; stop resisting.'" 2 RP at 35. Back up officers arrived and observed Thiry on the ground, struggling with Johnson. According to Thiry and the three responding officers, it took all four of them and multiple stun gun applications to subdue and handcuff Johnson.
¶ 5 After handcuffing Johnson, an officer advised him of his Miranda[1] rights and another officer searched him incident to his arrest. In the right front pocket of Johnson's sweatshirt, the officer discovered a plastic "baggy" containing white rocks that later tested positive as crack cocaine. 2 RP at 38.
¶ 6 The officers called for medical aid to evaluate Johnson, which is standard operating procedure when officers deploy their stun guns. Johnson initially cooperated with the medical aid responders and they cleared him for medical release to the officers. But Johnson refused to stand up or walk to the patrol car; the officers had to carry him to the car and Johnson straightened his legs to further hinder the officers' efforts to put him in the back of the car. The State charged Johnson with unlawful possession of a controlled substance, to wit: cocaine and obstructing a law enforcement officer.
¶ 7 Johnson testified that he had attended a family gathering before his arrest on May 4, 2008. While at the gathering, he began to feel cold and he grabbed a sweatshirt that "was pretty much laying around." 3 RP at 149. When he asked whose sweatshirt it was, no one present responded other than to say, "`Put it on if you're cold.'" 3 RP at 149. He then left on his sister's bicycle.
¶ 8 As Johnson prepared to cross a street he saw some headlights and heard an engine "revving," so he immediately turned around because he was concerned that someone was going to run over him and he rode back in the direction of the family gathering. 3 RP at 150. Johnson did not notice police presence nearby until he nearly collided with a patrol car that was making a turn and he swerved to avoid the car, hit a curb, and stumbled off his bicycle. As he tried to regain his balance, he saw a "red laser beam" on the ground next to him and he then felt his legs "locking up." 3 RP at 151. According to Johnson, Thiry never activated his emergency lights or siren.
¶ 9 Johnson testified that Thiry was shouting, "'Freeze, freeze, freeze,'" so Johnson put his hands up and said, "`I surrender. I surrender. I surrender,'" but Thiry activated the stun gun again. 3 RP at 153. Johnson tried to comply with Thiry's request to "get on the ground" but was unable to do so and Thiry deployed his stun gun again. 3 RP at 156. He tried to explain to Thiry why he could not get on the ground.
¶ 10 Ultimately, Johnson got on the ground and tried to comply with the officers' orders to put his hands behind his back, but he could not due to the effects of the repeated stun gun applications. When he did not comply, the officers used the stun gun several more times until they handcuffed him. Johnson said that, while on the ground, he was not wrestling with the officers; instead his body was just locking up and jerking from the stun gun's effects. He said that he was unable to walk to the patrol car for the same reason. Finally, he testified that he had no knowledge of having drugs on his person on May 4, that he did not use drugs, and that he did not know what the "baggy" containing cocaine was when the officers showed it to him. 3 RP at 188.
¶ 11 The trial court instructed the jury that Johnson had to prove his unwitting possession defense by a preponderance of the evidence. It also instructed the jury that the defendant is presumed innocent, that the State must prove every element of the charged crimes beyond a reasonable doubt, that the lawyers' arguments were not evidence, and that the jury must disregard any argument unsupported by the trial court's instructions.
¶ 12 During closing arguments, when discussing the reasonable doubt standard, the prosecutor stated:
What that says is "a doubt for which a reason exists." In order to find the defendant *939 not guilty, you have to say, "I doubt the defendant is guilty and my reason is I believed his testimony that he just borrowed that ... sweatshirt ... and he didn't know that the cocaine was in there, and he didn't know what cocaine was." And then you have to also believe that either he really didn't hear the lights and sirens or that Officer Thiry really forgot to turn them on and that a lot of those events didn't really happen or more events that didn't.
To be able to find reason to doubt, you have to fill in the blank, that's your job.
3 RP at 202. In reference to the "abiding belief" portion of the reasonable doubt standard, the prosecutor stated:
I like to look at abiding belief and use a puzzle to analogize that. You start putting together a puzzle and putting together a few pieces, and you get one part solved. So with this one piece, you probably recognize there's a freeway sign. You can see I-5. You can see the word "Portland" from looking in the background. You may or may not be able to see which city that is, but it is probably near one that is on the I-5 corridor.
You add another piece of the puzzle, and suddenly you have a narrower view. It has to be a city that has Mount Rainier in the background. You can see it. It can still be Seattle or Tacoma, or if you weren't familiar, you might think that mountain might be Mt. Hood, and it could be Portland.
You add a third piece of the puzzle, and at this point even being able to see only half, you can be assured beyond a reasonable doubt that this is going to be a picture of Tacoma.
3 RP at 204. Defense counsel neither objected nor requested a curative instruction in response to these arguments.
¶ 13 The jury convicted Johnson of unlawful possession of a controlled substance but was unable to reach a verdict on the obstruction charge. Before sentencing, the State moved to dismiss the obstruction charge. Johnson appeals.

Discussion

Prosecutorial Misconduct
¶ 14 Johnson contends that three statements made by the prosecutor during closing argument constituted prosecutorial misconduct because they misstated the law: (1) that the jury had to disbelieve Johnson's testimony in order to acquit; (2) that the jury had to "`fill in the blank'" to find reasonable doubt; and (3) that arriving at an abiding belief that satisfied the reasonable doubt standard was the same as intuiting the subject of a partially completed puzzle. Br. of Appellant at 14 (quoting Clerk's Papers at 167). The State counters that the statements were not improper, prejudicial, or flagrant and ill-intentioned.

A. Standard of Review
¶ 15 A defendant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice. State v. Fisher, 165 Wash.2d 727, 747, 202 P.3d 937 (2009). Prejudice exists where there is a substantial likelihood that the misconduct affected the verdict. State v. McKenzie, 157 Wash.2d 44, 52, 134 P.3d 221 (2006). We review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. State v. Dhaliwal, 150 Wash.2d 559, 578, 79 P.3d 432 (2003).

B. Improper Arguments
¶ 16 First, the trial court instructed the jury on Johnson's unwitting possession defense. A defendant assumes the burden of proving an unwitting possession defense by a preponderance of the evidence. State v. Balzer, 91 Wash.App. 44, 67, 954 P.2d 931 (1998). When viewed in context, the prosecutor's statement that the jury must believe his testimony regarding his unwitting possession of the cocaine in order to acquit him on that basis was an accurate statement of the law insofar as that was the only evidence Johnson presented about his defense. Thus, it was not improper.
¶ 17 But the prosecutor's second and third statements are problematic. In State *940 v. Anderson, the prosecutor argued to the jury that "in order to find the defendant not guilty, you have to say `I don't believe the defendant is guilty because,' and then you have to fill in the blank." 153 Wash.App. 417, 431, 220 P.3d 1273 (2009). We held that the argument was improper because it subverted the presumption of innocence by implying that the jury had an initial affirmative duty to convict and that the defendant bore the burden of providing a reason for the jury not to convict him. Anderson, 153 Wash. App. at 431, 220 P.3d 1273.
¶ 18 The prosecutor's arguments in Anderson also discussed the reasonable doubt standard in the context of everyday decision making, such as choosing to have elective surgery, leaving children with a babysitter, and changing lanes on the freeway. 153 Wash.App. at 425, 431, 220 P.3d 1273. We held that those arguments were improper because they "trivialized and ultimately failed to convey the gravity of the State's burden and the jury's role in assessing" the State's case against the defendant and because they implied, by "focusing on the degree of certainty the jurors would have to have to be willing to act, rather than that which would cause them to hesitate to act," that the jury should convict the defendant unless it found a reason not to do so. Anderson, 153 Wash.App. at 431-432, 220 P.3d 1273.
¶ 19 Similarly, in Venegas, the prosecutor argued, "In order to find the defendant not guilty, you have to say to yourselves: `I doubt the defendant is guilty, and my reason is'blank." 155 Wash.App. at 523, 228 P.3d 813. We reiterated our holding that this argument was improper. Venegas, 155 Wash.App. at 523 n. 16, 524, 228 P.3d 813.
¶ 20 Anderson and Venegas control the outcome of this case. Here, the prosecutor made the same fill in the blank argument as the prosecutor in Anderson and Venegas. Furthermore, as in Anderson, here the prosecutor's arguments discussing the reasonable doubt standard in the context of making an affirmative decision based on a partially completed puzzle trivialized the State's burden, focused on the degree of certainty the jurors needed to act, and implied that the jury had a duty to convict without a reason not to do so. Therefore, we hold that the prosecutor's arguments were erroneous and improper.

C. Flagrant and Ill-Intentioned
¶ 21 Johnson did not object to any of the prosecutor's improper arguments. Defense counsel's failure to object to prosecutorial misconduct at trial constitutes waiver on appeal unless the misconduct is "`so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice'" and is incurable by a jury instruction. Fisher, 165 Wash.2d at 747, 202 P.3d 937 (internal quotation marks omitted) (quoting State v. Gregory, 158 Wash.2d 759, 841, 147 P.3d 1201 (2006)).
¶ 22 We note that, in State v. Fleming, 83 Wash.App. 209, 214, 921 P.2d 1076 (1996), Division One of this court held that improper prosecutorial arguments were flagrant and ill-intentioned where that court had previously recognized those same arguments as improper in a published opinion. Here, the prosecutor made these arguments on May 14, 2009. We published Anderson on December 8, 2009. 153 Wash.App. at 417, 220 P.3d 1273. But we decline to follow Division One's holding in Fleming, suggesting that it is necessary to have a published opinion holding that certain prosecutorial conduct is flagrant and ill-intentioned before such conduct warrants reversal of a conviction.
¶ 23 Instead, we follow our holding in Venegas that such arguments are flagrant and ill-intentioned and incurable by a trial court's instruction in response to a defense objection. 155 Wash.App. at 523 n. 16, 525, 228 P.3d 813. Although the trial court's instructions regarding the presumption of innocence may have minimized the negative impact on the jury, and we assume the jury followed these instructions, a misstatement about the law and the presumption of innocence due a defendant, the "bedrock upon which [our] criminal justice system stands," constitutes great prejudice because it reduces the State's burden and undermines a defendant's due process rights. State v. Bennett, 161 Wash.2d 303, 315, 165 P.3d 1241 *941 (2007); Anderson, 153 Wash.App. at 432, 220 P.3d 1273.
¶ 24 In State v. Warren, 165 Wash.2d 17, 26 n. 3, 195 P.3d 940 (2008), cert. denied, ___ U.S. ___, 129 S.Ct. 2007, 173 L.Ed.2d 1102 (2009), our Supreme Court declined to apply a constitutional harmless error analysis to improper prosecutorial arguments involving the application and undermining of the presumption of innocence. Furthermore, even were we to do so, with conflicting evidence and a misstatement of the reasonable doubt standard and the presumption of innocence due Johnson, we cannot conclude that such misstatements did not affect the jury's verdict. Thus, we reverse Johnson's conviction and remand to the trial court for further proceedings.
¶ 25 Because we reverse Johnson's conviction and remand for further proceedings, we do not further address Johnson's claim of ineffective assistance of counsel.
We concur: ARMSTRONG and HUNT, JJ.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).