FILED
COURT OF APPEALS
DIVISION II

2013 JUL 23 AM 9: 13

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION. II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 41962-9-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| PATRICK H. POST, | |
| Appellant. | |

BJORGEN, J. – A jury returned verdicts finding Patrick Henry Post guilty of first degree

child molestation and first degree child rape. Post appeals his convictions, asserting (1) the trial

court erred under RCW 10.58.090 and ER 404(b) by admitting evidence of his 1987 convictions

for indecent liberties, (2) the prosecutor committed misconduct during closing arguments by

presenting a jigsaw puzzle analogy that misled the jury on the State's burden of proof, and (3)

the trial court violated his right to a public trial by sealing juror questionnaires without first

performing a *Bone-Club*[1] analysis. We affirm because the trial court properly admitted the prior

_____

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

convictions as evidence of a common scheme or plan, the prosecutor did not commit reversible error, and the juror questionnaires were properly sealed after trial.

## FACTS

MAM[2] was born on June 19, 2000 and is the daughter of MCM. MCM was once married to JR Herrington. JR's mother, Vicki Herrington had a long-term but nonmarital relationship with the appellant Post. Because of that, JR considered Post as his stepfather. MAM often referred to Post as "Papa Post," or "Papa Pat." Report of Proceedings (RP) at 216, 317. During JR and MCM's marriage, Vicki would sometimes provide child care for MAM. On occasion, Vicki would take MAM to Post's trailer home and allow Post to babysit MAM.

In June 2008, MAM told her great-grandparents that Post "had touched her and kissed her in her private places." RP at 315-16. MAM later disclosed that Post had exposed his penis to her and that he had asked her to lick his ejaculate, but that she refused. MAM also disclosed that Post would touch her private parts with "bad toys" that looked like "boy private parts," stating that one of the "toys" vibrated. RP at 220-21, 284, 319. MAM also stated that Post would show her photographs and movies with naked people in them.

On February 7, 2011, the State charged Post by amended information with first degree child molestation and first degree child rape for conduct occurring between December 1, 2002 and March 1, 2007. Before trial, the State notified Post that it would seek to admit, under RCW 10.58.090 and/or ER 404(b), evidence of Post's 1987 convictions for two counts of indecent

---

[2] We refer to the child victim and to family members sharing the victim's last name by their initials to protect the child victim's privacy.

liberties against his daughter and his daughter's friend. Post moved the trial court to exclude evidence of his prior convictions.

On these issues, the trial court first ruled that evidence of Post's previous convictions was admissible under RCW 10.58.090, stating:

> [RCW 10.58.090] requires the analysis under [ER] 403, including the following factors under Subsection 6 of the statute; the similarity of the prior acts to the acts charged. The similarities that I see in these particular cases—when I say cases, I mean the alleged victim in the case that's been charged, as well as the 1986 incidence, are the age of the victims, 6 to 12, they are all female[.]
>
> I agree with the defense position that this is a sexual act, and in and of itself it's not particularly unique, although I do take note of the fact that the descriptions by the victims in both cases was very similar, the touching, the requirement that the victim touch an erection of Mr. Post, most importantly the use of sex toys. The victim in the case charged describes a vibrating something or other that was used on her. The family connection to the victims; these are not strangers to the defendant. So with regard to the similarity of the prior acts, I think they are very similar. So that factor weighs in favor of admission.

RP at 52-53. In ruling that the State's proffered evidence was admissible under RCW 10.58.090, the trial court also reasoned that, although the length of time between the 1987 convictions and the incidents forming the basis of Post's current charges weighed against admission, the frequency of the prior acts and the necessity of the proffered evidence weighed in favor of admissibility.

After the trial court ruled that evidence of Post's prior convictions was admissible under RCW 10.58.090, it indicated that the evidence was also admissible under ER 404(b) and the following colloquy took place:

[Trial court]: Now the question is: Does—is there a record that needs to be made under 404(b) also in terms of going through those factors or do you feel that I've made a sufficient record? Because I think it's admissible under both.

[State]: Your Honor in light of the Court's last statement, the State is satisfied with the court's record.

[Trial court]: [Defense counsel]?

[Defense counsel]: I believe that the Court has adequately undergone the 403 analysis for the record.

[Trial court]: There are factors under 404(b) which are required also. Does the defense believe that that record's been made sufficiently?

[Defense counsel]: Well, if the—if the State is offering it specifically under the [State v. DeVincentis, 150 Wn.2d 11, 74 P.3d 119 (2003)] decision, some of the factors that the Court has—in fact I think all of the factors that are mentioned in [DeVincentis] is taken into account on the analysis that the Court just underwent on the record.

RP at 56.

At trial, the court admitted findings of fact and conclusions of law that were entered following Post's 1986 bench trial for two counts of indecent liberties and provided a limiting instruction regarding the jury's use of that evidence. The court also discussed the sealing of juror questionnaires with the State and defense counsel and ruled that it would not seal them.

At closing argument, the State made the following remarks to the jury:

At the beginning of this trial, you were a blank slate, you had no evidence. And I told you at that time that the defendant was guilty of rape of a child in the first degree and child molestation in the first degree, just like right now I'm telling you this is a picture of the city of Seattle. Over the course of this trial, pieces of the puzzle began to fall into place.

Now I show this to you because I submit to you this is a picture of the city of Seattle. I state that to you because there is Mount Rainier, there is the Space Needle and you see a little bit of KeyArena. But I'm also going to grant you that there's still a big piece of the puzzle missing. There [are] no eyewitnesses, there is no medical evidence. The only question then is even though not everyone [sic] of your question[s] has been answered, and even though there may still be doubts, are they reasonable ones? Would you have a reasonable doubt even though a big piece of the puzzle is missing that this is a picture of the city of Seattle? And I submit to you, you shouldn't, and you wouldn't, and then you would be right.

RP at 657-58. Post did not object at trial to these statements.

4

No. 41962-9-II

The jury returned verdicts finding Post guilty of first degree child rape and first degree child molestation. Post timely appeals.

ANALYSIS

I. EVIDENCE OF PRIOR BAD ACTS

Post first asserts that the trial court erred by admitting evidence of his 1987 convictions for indecent liberties under RCW 10.58.090 and ER 404(b). Our Supreme Court recently held that RCW 10.58.090 was unconstitutional because it violated the separation of powers doctrine.[3] *State v. Gresham*, 173 Wn.2d 405, 432, 269 P.3d 207 (2012). Accordingly, we turn to whether the trial court properly admitted evidence of Post's prior convictions under ER 404(b).

We review the admission or exclusion of evidence under ER 404(b) for abuse of discretion. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). A trial court abuses its discretion when it bases its decision on unreasonable or untenable grounds. *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009).

ER 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

---

[3] RCW 10.58.090 provided in part:
> In a criminal action in which the defendant is accused of a sex offense, evidence of the defendant's commission of another sex offense or sex offenses is admissible, notwithstanding Evidence Rule 404(b), if the evidence is not inadmissible pursuant to Evidence Rule 403.

Evidence of a person's prior misconduct is admissible when (1) the party seeking to admit the evidence demonstrates by a preponderance of the evidence that the misconduct occurred, (2) the party identifies the purpose for the evidence's admission, (3) the party establishes the evidence's relevance to proving an element of the charged crime, and (4) the trial court weighs the evidence's probative value against its prejudicial effect. *Gresham*, 173 Wn.2d at 421. The trial court must conduct this analysis on the record. *State v. Acosta*, 123 Wn. App. 424, 433, 98 P.3d 503 (2004).

Post contends first that the trial court erred by failing to conduct its ER 404(b) analysis on the record before admitting evidence of Post's prior indecent liberties convictions. Here, the trial court conducted an on-the-record analysis when it admitted evidence of Post's prior indecent liberties convictions under RCW 10.58.090, but it did not conduct a separate analysis under ER 404(b). This failure to conduct an ER 404(b) analysis on the record, however, was invited by Post when his defense counsel asserted that the trial court's RCW 10.58.090 analysis was sufficient to admit evidence of his prior convictions under ER 404(b) and that the trial court did not need to conduct a separate ER 404(b) analysis on the record. Under the invited error doctrine, a criminal defendant may not set up error at trial and then complain of it on appeal. *In re Pers. Restraint of Thompson*, 141 Wn.2d 712, 723, 10 P.3d 380 (2000). The invited error doctrine applies when counsel takes affirmative action that induces the trial court to take an action that the party later challenges on appeal. *Thompson*, 141 Wn.2d at 723-24.

Further, even if any possible error in failing to conduct an ER 404(b) analysis on the record were not invited, the error was harmless because the evidence at issue was admissible to show a common scheme or plan under ER 404(b) and the court did carry out the required

6

balancing inquiry under ER 403. The court held in *State v. Sublett*, 156 Wn. App. 160, 196, 231 P.3d 231 (2010), *aff'd*, 176 Wn.2d 58, 292 P.3d 715 (2012), that "where the trial court fails to conduct an ER 404(b) analysis on the record, the error is harmless unless the failure to do the balancing, within reasonable probability, materially affected the outcome of the trial." Evidence of prior misconduct is admissible to show a common scheme or plan under ER 404(b) where (1) "'several crimes constitute constituent parts of a plan in which each crime is but a piece of the larger plan'" or (2) "'an individual devises a plan and uses it repeatedly to perpetrate separate but very similar crimes.'" *Gresham*, 173 Wn.2d at 422 (quoting *State v. Lough*, 125 Wn.2d 847, 854-55, 889 P.2d 487 (1995)). Post's case falls within the second type, a single plan followed in perpetrating separate but very similar crimes.

Evidence of the second type of common scheme or plan is admissible if the prior misconduct and the charged crime demonstrate "'such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which' the two are simply 'individual manifestations.'" *Gresham*, 173 Wn.2d at 422 (quoting *Lough*, 125 Wn.2d at 860). "[W]hile the prior act and charged crime must be markedly and substantially similar, the commonality need not be 'a unique method of committing the crime.'" *Gresham*, 173 Wn.2d at 422 (quoting *DeVincentis*, 150 Wn.2d at 19-21).

In *Gresham*, one of the defendants was convicted of molestation for fondling the genitals of his granddaughter while on a trip with her and her mother. The Supreme Court upheld the admission of prior acts of molestation of four other children to show a common scheme or plan when, in two instances, the defendant "took a trip with young girls and at night, while the other adults were asleep, approached those girls and fondled their genitals." *Gresham*, 173 Wn.2d at

7

422. The two other prior incidents, however, took place at the defendant's home, and one of them and one of the incidents on a trip also involved oral sex. *Gresham*, 173 Wn.2d at 415. The *Gresham* court reasoned that these differences between the prior acts and the charged crimes did not outweigh the fact that "the remaining details share[d] such a common occurrence of fact with the molestation of [the victim of the charged crime]." *Gresham*, 173 Wn.2d at 423. Accordingly, our Supreme Court held that the trial court did not abuse its discretion "in determining that [defendant's prior bad acts] were merely individual manifestations of a common plan." *Gresham*, 173 Wn.2d at 423.

Likewise in *State v. Kipp*, 171 Wn. App. 14, 21, 286 P.3d 68 (2012), we held that although the defendant performed different sex acts on each victim, the defendant's prior actions were admissible to show a common scheme or plan because the victims were of similar ages, the victims were related to the defendant, and the defendant molested both victims in his house and the victims' grandparents' house. In *State v. Sexsmith*, 138 Wn. App. 497, 505, 157 P.3d 901 (2007), Division Three of this court held evidence of prior bad acts admissible under the ER 404(b) common scheme or plan exception where the defendant was in a position of authority over both victims, the victims were of a similar age, and the defendant isolated both victims when he molested them.

Although the trial court did not perform a separate ER 404(b) analysis, it found Post's prior convictions "very similar" to his current charges when it undertook its RCW 10.58.090 analysis, stating:

I do take note of the fact that the descriptions by the victims in both cases was very similar, the touching, the requirement that the victim touch an erection of Mr. Post, most importantly the use of sex toys. The victim in the case charged describes a vibrating something or other that was used on her. The family connection to the victims; these are not strangers to the defendant. So with regard to the similarity of the prior acts, I think they are very similar. So that factor weighs in favor of admission.

RP at 53.

As in *Gresham* and *Kipp*, the trial court found here that Post's prior acts were similar to his current charges in a number of ways: he had a familial-like relationship to the victims, he touched each victim in a similar way, he asked each victim to touch his erect penis, and he used sex toys on each of the victims. Drawing on the case law above, this was sufficient to establish that Post's prior bad acts "were merely individual manifestations of a common plan," and, thus, the evidence was admissible under ER 404(b). *Gresham*, 173 Wn.2d at 423. For that reason, any error in failing to conduct an explicit ER 404(b) analysis on the record was harmless under *Sublett*, 156 Wn. App. at 196.

## II. PROSECUTORIAL MISCONDUCT

Post asserts that the prosecutor committed misconduct by misstating the State's burden of proof when presenting a jigsaw puzzle analogy during closing argument. We disagree.

A defendant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). Prejudice exists when there is a substantial likelihood that the misconduct affected the verdict. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). Because Post did not object to the prosecutor's allegedly improper conduct at trial, we must ascertain whether the prosecutor's misconduct was "so flagrant and ill-intentioned" that it caused an "enduring and resulting

No. 41962-9-II

prejudice" incurable by a jury instruction. *State v. Stenson*, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997).

Under this heightened standard of review, Post has the burden to show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012) (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). In analyzing a prosecutorial misconduct claim, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762. The question is always whether "'such a feeling of prejudice [has] been engendered or located in the minds of the jury as to prevent a [defendant] from having a fair trial?'" *Emery*, 172 Wn.2d at 762 (quoting *Slattery v. City of Seattle*, 169 Wash. 144, 148, 13 P.2d 464 (1932)).

We analyze whether the State's use of a jigsaw puzzle analogy at closing constituted misconduct on a case-by-case basis, considering the context of the argument as a whole. *State v. Fuller*, 169 Wn. App. 797, 825, 282 P.3d 126 (2012). In *State v. Johnson*, 158 Wn. App. 677, 682, 243 P.3d 936 (2010), for example, the prosecutor stated at closing:

> I like to look at abiding belief and use a puzzle to analogize that. You start putting together a puzzle and putting together a few pieces, and you get one part solved. So with this one piece, you probably recognize there's a freeway sign. You can see I-5. You can see the word "Portland" from looking in the background. You may or may not be able to see which city that is, but it is probably near one that is on the I-5 corridor.
> You add another piece of the puzzle, and suddenly you have a narrower view. It has to be a city that has Mount Rainier in the background. You can see it. It can still be Seattle or Tacoma, or if you weren't familiar, you might think that mountain might be Mt. Hood, and it could be Portland.

10

You add a third piece of the puzzle, and at this point even being able to see only half, you can be assured beyond a reasonable doubt that this is going to be a picture of Tacoma.

We held that the prosecutor's jigsaw analogy in *Johnson*, 158 Wn. App. at 685, was improper because it "trivialized the State's burden, focused on the degree of certainty the jurors needed to act, and implied that the jury had a duty to convict without a reason not to do so." We further held in *Johnson*, 158 Wn. App. at 682, 685, that the prosecutor's improper jigsaw analogy, when coupled with other instances of misconduct including asserting an improper "fill[-]in[-]the[-]blank" argument at closing, was so flagrant and ill intentioned that it evinced an enduring and resulting prejudice incurable by a jury instruction. Accordingly, we reversed and remanded Johnson's convictions for a new trial. *Johnson*, 158 Wn. App. at 686.

However, we have held jigsaw puzzle analogies to be proper in other cases. For example, in *Fuller*, 169 Wn. App. at 827, we held the following argument employing the jigsaw puzzle analogy to be proper:

> What I am going to do now is use a jigsaw puzzle to illustrate the concept of beyond a reasonable doubt. . . . We get a few of the pieces of the puzzle. . . . [W]e might think it looks like Tacoma, but we don't know—
> . . . .
> [W]e do not have enough pieces or enough evidence beyond a reasonable doubt that it's [a picture] of Tacoma. But let's say we get some more pieces. . . . But we may not yet have enough pieces, enough evidence to know beyond a reasonable doubt that it's Tacoma.
> Now, we have more pieces. We have more evidence and we can see beyond a reasonable doubt that this is a picture of Tacoma. . . .
> A trial is very much like a jigsaw puzzle. It's not like a mystery novel or CSI or a movie. You're not going to have every loose end tied up and every question answer[ed]. What matters is this: Do you have enough pieces of the puzzle? Do you have enough evidence to believe beyond a reasonable doubt that the defendant is guilty?

11

In holding that the State's use of the puzzle analogy was not improper in *Fuller*, we noted that, unlike in *Johnson*, the State's puzzle analogy "neither equated its burden of proof to making an everyday choice nor quantified the level of certainty necessary to satisfy the beyond a reasonable doubt standard." *Fuller*, 169 Wn. App. at 827.

Here, the analogy to a jigsaw puzzle in the State's closing argument is strikingly similar to the argument we approved in *Fuller*, as it does not quantify the level of certainty required by the jury to satisfy the State's burden of proof. *See Fuller*, 169 Wn. App. at 826-27; *see also State v. Curtis*, 161 Wn. App. 673, 700-01, 250 P.3d 496 (2011) (State's puzzle analogy did not quantify the level of certainty required to satisfy the beyond a reasonable doubt standard and did not minimize nor shift the State's burden of proof). Accordingly, we hold that the State's use of the puzzle analogy at closing did not constitute misconduct.

Post also noted that the prosecutor emphasized the significance of the 1987 convictions in the following excerpt from closing argument:

> I submit to you that there would be a tough task at hand for you during your deliberation processes if this was simply a situation where [MAM] was saying to all of you, to 14 of you as she's said to others, the defendant touched her privates and licked her privates, and that disclosure exists in a vacuum. The difference in this case, ladies and gentlemen, [MAM's] not alone, she's not standing alone. [CH] who was 12 years old in 1984 and '85 is standing right there with her. [HF] who was 11 years old is standing right there with her. And they're saying to [MAM] and they're saying to you in the words that will come off the paper of Judge Swayze when he presided over that trial in 1986. The defendant did this to [MAM], right there and then you have [CH] and [HF] telling you, because he did it to us too.

RP at 625-26.

Since the evidence of the 1986 acts was properly admitted, the prosecutor had every right to emphasize their significance in closing argument. With the last sentence of this excerpt,

though, the prosecutor came very close to urging the jury to view the 1986 acts as evidence that Post had a continuing propensity to carry out these acts, a purpose beyond the pale of ER 404(b). We need not decide whether that line was crossed, though, because Post neither objected to the remark at trial nor requested a curative jury instruction. Thus, under *Stenson*, 132 Wn.2d at 719, the test for misconduct is not met, even if the remark itself may be improper.

### III. PUBLIC TRIAL RIGHTS

Finally, Post argues that the trial court violated his public trial rights by sealing juror questionnaires without conducting a *Bone-Club* analysis. This argument fails. In *State v. Beskurt*, 176 Wn.2d 441, 293 P.3d 1159 (2013), the Supreme Court recently addressed and rejected in a plurality decision the argument that the right to a public trial extended to the sealing of juror questionnaires after the conclusion of trial. Furthermore, the trial court here specifically ordered the juror questionnaires to remain open.[4] Accordingly, no closure took place that would have triggered

---

[4] The juror questionnaires were apparently sealed contrary to the trial court's specific directions to leave them open. Although the juror questionnaires were mistakenly sealed, we do not direct the trial court to order the questionnaires unsealed in light of our Supreme Court's recognition that "'[i]ndividual juror information, other than name, is presumed to be private.'" *Beskurt*, 176 Wn.2d at 448 (quoting GR 31(j)). In *Beskurt*, the lead plurality opinion indicated that any member of the public wishing to view juror questionnaires must comply with GR 31(j), which provides:
> **Access to Juror Information.** Individual juror information, other than name, is presumed to be private. After the conclusion of a jury trial, the attorney for a party, or party pro se, or member of the public, may petition the trial court for access to individual juror information under the control of court. Upon a showing of good cause, the court may permit the petitioner to have access to relevant information. The court may require that juror information not be disclosed to other persons.

No. 41962-9-II

the trial court's duty to perform a *Bone-Club* analysis.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJØRGEN, J.

We concur:

QUINN-BRINTNALL, J.

JOHANSON, A.C.J.