# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  52733-2-II |
| Respondent, | |
| v. | |
| SEBASTIAN SAMUEL LEVY ALDRETE, | UNPUBLSHED OPINION |
| Appellant. | |

SUTTON, A.C.J — Sebastian Levy-Aldrete appeals his second degree felony murder conviction.  He argues that prosecutorial misconduct deprived him of a fair trial.  We agree and hold that the prosecutor committed misconduct when he (1) presented an improper puzzle analogy, (2) argued that the jury's verdict must "speak the truth," and (3) argued facts not in evidence. Accordingly, we reverse Levy-Aldrete's conviction and remand for a new trial.[1]

## FACTS

### I. BACKGROUND

Levy-Aldrete and his mother lived in a secured apartment building with two levels of parking garage below.  Both parking garage levels allowed people to exit but not to enter.  The front lobby of the building required a key pad code to enter.  Levy-Aldrete and his mother's apartment was on the top floor of the building, and they typically locked the front door.

---

[1] Because we reverse Levy-Aldrete's conviction based on prosecutorial misconduct, we do not address his other arguments.

At approximately 5:30 am on October 16, 2017, Levy-Aldrete called the police and reported that an intruder had attacked and killed his mother in their apartment. The police responded and found Levy-Aldrete's mother dead in a pool of her own blood, with blood splattered all over the walls, glass shattered around her, and a broken Maker's Mark bottle. Levy-Aldrete was anxious and nervous, and he was avoiding eye contact. He pretended to cry but was unable to produce tears.

There were no signs of forced entry to the building or to the apartment. Other than Levy-Aldrete's report, there was no evidence of a burglary. Nothing from the apartment was taken or moved and there were no signs of sexual assault of his mother.

There were also no signs of a struggle between Levy-Aldrete and the alleged intruder. A Clorox wipe with Levy-Aldrete's mother's blood on it and Levy-Aldrete's gloves with his and his mother's DNA on them were found in a recycling bin. There was a trail of Levy-Aldrete's blood going down one stairwell to the parking garage where the glove and the Clorox wipe were found. The police also observed that the apartment was recently cleaned and smelled like a cleaning agent, and the detectives found a trash can full of Clorox wipes in the apartment.

In a recorded interview with the police, Levy-Aldrete claimed that he woke up to the sound of his mother screaming. He walked into the hallway from his bedroom and saw an intruder. The intruder fought with him, cut his face with the Maker's Mark bottle, and then left. Levy-Aldrete grabbed towels from his bathroom to stop the bleeding from his mother's neck.

Levy-Aldrete stated that he then left the apartment and chased after the intruder. He did not find the intruder, so he went back to his apartment and called 911. Levy-Aldrete stated that is

hands were covered in blood, so he needed to use a Clorox wipe to clean the blood off his phone before he was able to dial 911.

The police officers did not believe Levy-Aldrete's version of the events. The police noted that Levy-Aldrete's demeanor was inconsistent with that of someone whose mother had just been brutally murdered.

## II. TRIAL

The State charged Levy-Aldrete by amended information with premeditated murder in the first degree and murder in the second degree.

### A. CASE THEORIES AND EVIDENCE

The State alleged that Levy-Aldrete killed his mother in their shared apartment by striking her repeatedly in the head with a jagged Maker's Mark bottle and then strangling her to death in her bed. The State argued that Levy-Aldrete did so because he had spent nearly all the money that his mother had given him to purchase their new home, which purchase was to be finalized that day, and he did not want her to discover that he had spent the money. The State also argued that he killed her because he stood to inherit almost $250,000 from her estate.

The State asserted that after killing his mother, Levy-Aldrete attempted to dispose of the evidence by cleaning the apartment with Clorox wipes. He hid a Clorox wipe and a pair of gloves in a recycling bin in the building's parking garage. Levy-Aldrete also ran up and down the stairwell to make it appear as though he chased an intruder. And, before calling 911, Levy-Aldrete changed his clothes and flipped his sweatshirt inside out.

Defense counsel argued that the evidence did not support the State's theory because Levy-Aldrete had not spent a lot of the money his mother had given him; he did not have large expenditures; and he still had over $10,000 in his bank account, which was more than enough to cover the closing costs to buy a house as they had planned. Further, defense counsel argued that several neighbors testified to hearing more than one person in the apartment that early morning and multiple persons running up and down the stairwell.

Blood experts called by the State and the defendant testified that they would have expected blood spatter on Levy-Aldrete's clothing had he been wielding the Maker's Mark bottle forcefully striking his mother's face, but there was no blood spatter found on his sweatshirt or jeans, and blood spatter was only found on the walls abutting the mattress where his mother was found.

## B. JURY INSTRUCTIONS

The court's reasonable doubt instruction stated:

> The defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The State is the plaintiff and has the burden of proving each element of the crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists as to these elements.
>
> A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
>
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

Clerk's Papers (CP) at 108.

No. 52733-2-II

C. CLOSING ARGUMENT

1. Puzzle Analogy

Shortly after the prosecutor began closing argument, he displayed a PowerPoint slide to tell the jury to think of "proof beyond a reasonable doubt" "like a puzzle:"

> ## Proof Beyond
> ## a Reasonable Doubt
>
> - Doubts as to elements
> - Doubt which are "big picture" reasonable
> - Think of it like a puzzle

Verbatim Report of Proceedings (VRP) (Nov. 8, 2018) at 2570, 2573; Supplemental CP—State Closing PowerPoint, slide 6.[2] The prosecutor continued in relevant part as follows:

> [Prosecutor]: The State has to prove these charges to you beyond a reasonable doubt, and what that means is you look at the evidence, you have a doubt related to an element of the crime, and that doubt persists in light of all the evidence in the case. That's how you know it's reasonable. It's not looking at a doubt or an issue in isolation, but assessing that issue or that question as to an element in light of everything you know in the case.
>
> When you think about the *proof or the burden of proof* in this case, *consider it in the way you would a puzzle*. If you've ever taken a ferry in this state, you may sit down – –
>
> [Defense counsel]: Objection to the puzzle analogy.
>
> The Court: Overruled.

VRP (Nov. 8, 2018) at 2572 (emphasis added). The prosecutor then continued:

---

[2] The transcript is not clear as to when this slide was presented or whether defense counsel objected at that time.

5

You may sit down at the table and you may find a pile of puzzle pieces, and maybe the box isn't there so you don't know what the image is, and *with enough time you're able to put the pieces into place that you know beyond a reasonable doubt as to what the image is.*

You can't seem to find a spot for them and so you set them aside. You may reach that point even though pieces of the puzzle are broken, torn, ripped, or frayed. But *there's going to be a point at which you have enough pieces that you have an image that you are confident of.*

*Consider a trial in much the same way.* The State has the burden of presenting you evidence, enough pieces of evidence that tell you the defendant is guilty beyond a reasonable doubt, and *you may reach that conclusion even though there are pieces of evidence, like pieces of the puzzle, that were never presented.* They're out there somewhere in the ether; they were gone before you even sat down. You may reach that conclusion even though there are pieces of evidence that you just don't know what to make of, and so you set that piece of evidence aside. You may reach that conclusion *even though there are pieces of evidence like pieces of the puzzle* that have warts and flaws.

The point is, when you view all the evidence in total, warts and all, *if what you have in place tells you beyond a reasonable doubt that the defendant is guilty of the crime, warts and all, holes and all, then the defendant is guilty and your verdict reflects that.*

VRP (Nov. 8, 2018) at 2572-74 (emphasis added).

During rebuttal, the prosecutor again referred to a puzzle analogy:

If you go back to my discussion about proof beyond a reasonable doubt and the idea of the puzzle, remember, when sit down to do the puzzle, sometimes pieces are just gone before you even got there and *yet the question is what you have in front of you, is that enough to create the image.* This is a missing puzzle piece, a missing piece of evidence that you never had at the start.

The question isn't whether there's going to be a missing piece of evidence. The question isn't whether with the benefit of hindsight things could have been done. *The question is what you have in front of you, what image does that paint for you.*

VRP (Nov. 8, 2018) at 2689 (emphasis added).

6

2. "Speak the Truth"

The prosecutor argued the following in his closing statement:

> We wish we knew why, but at the end of the day we don't care why because all the State is obligated to prove is that he did it, and through this evidence you know that he did it, and it is time that *your verdict reflects the truth*. Thank you, ladies and gentlemen.

VRP (Nov. 8, 2018) at 2619 (emphasis added). Levy-Aldrete did not object.

3. Defendant's Self-Inflicted Cuts

The prosecutor also argued evidence that was not contained in the record:

> If you've ever watched TV and one person kills another, that person needs to make it look like an act of self-defense and so they have to harm themselves, or five people; one's involved in killing all the others, wants to make it look like an ambush where they survive and so they have to harm themselves to kind of deflect suspicion, and however it happens, the mechanism of injury is always the same. It's "I'm going to shoot myself in the arm" or "I'm going to punch myself in the face." It's never a serious injury. The would-be culprit doesn't shoot themselves in the chest. They harm themselves in some superficial way that they'll survive. And that happened here.

VRP (Nov. 8, 2018) at 2578. Levy-Aldrete did not object. To underscore the point, the prosecutor showed the jury the victim's photograph showing the cuts on her face and asked them to compare those wounds to the "superficial" cuts shown on the photo of Levy-Aldrete's face. VRP (Nov. 8, 2018) at 2578; State Closing PowerPoint, slide 9, 10.

The jury found Levy-Aldrete guilty of one count of second degree felony murder. Levy-Aldrete appeals his conviction.

ANALYSIS

I. STANDARDS OF REVIEW

"'To make a successful claim of prosecutor misconduct, the defense must establish that the prosecuting attorney's conduct was *both* improper and prejudicial.'" *In re PRP of Sandoval*, 189 Wn.2d 811, 832, 408 P.3d 675 (2018) (quoting *State v. Davis*, 175 Wn.2d 287, 330, 290 P.3d 43 (2012), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018)). We will reverse the defendant's conviction where a defendant "meets the burden of establishing both that (1) the State committed misconduct by making inappropriate remarks and (2) those remarks had prejudicial effect." *State v. Fuller*, 169 Wn. App. 797, 812, 282 P.3d 126 (2012).

A prosecutor commits misconduct by misstating or trivializing the State's burden of proof. *State v. Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014). Similarly, "speak the truth" arguments are improper. *Lindsay*, 180 Wn.2d at 437; *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). Finally, a prosecutor commits misconduct by arguing matters outside the record. *Davis*, 175 Wn.2d at 330-31. To prove prejudice, a defendant must show that the misconduct had a substantial likelihood of affecting the jury's verdict. *Davis*, 175 Wn.2d at 331. Further, when a defendant objects to an allegedly improper comment, we evaluate the trial court's ruling for an abuse of discretion. *Davis*, 175 Wn.2d at 331.

"Failure to object to an allegedly improper remark constitutes waiver unless the remark is 'so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'" *Davis*, 175 Wn.2d at 330-31 (quoting *State v. Stenson*, 132 Wn.2d 668, 719, 904 P.2d 1239 (1997)). We view the prosecutor's conduct in "'the context of the total argument, the issues in the case, the evidence addressed in the argument,

and the instructions given to the jury.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

## II. PROSECUTORIAL MISCONDUCT

### A. PUZZLE ANALOGY

Levy-Aldrete first argues that the prosecutor used an improper puzzle analogy, which minimized and trivialized the State's burden of proof. We agree and hold that the use of the puzzle analogy was improper.

Several cases have addressed "puzzle analogy" arguments. *Fuller*, 169 Wn. App. at 797; *State v. Curtiss*, 161 Wn. App. 673, 700, 250 P.3d 496 (2011); *State v. Johnson*, 158 Wn. App. 677, 685, 243 P.3d 936 (2010); *Lindsay*, 180 Wn.2d at 436. We view the State's use of a jigsaw puzzle analogy on a case-by-case basis, considering the context of the argument as a whole. *Fuller*, 169 Wn. App. at 825.

In *Fuller,* we held that the use of a jigsaw puzzle analogy was not improper. 169 Wn. App. at 825-28. There, the prosecutor argued:

> What I am going to do now is use a jigsaw puzzle to illustrate the concept of beyond a reasonable doubt. . . . We get a few of the pieces of the puzzle. . . . [W]e might think it looks like Tacoma, but we don't know—
>
> [W]e do not have enough pieces or enough evidence beyond a reasonable doubt that it's [a picture] of Tacoma. But let's say we get some more pieces. . . . But we may not yet have enough pieces, enough evidence to know beyond a reasonable doubt that it's Tacoma.
>
> Now, we have more pieces. We have more evidence and we can see beyond a reasonable doubt that this is a picture of Tacoma.

> A trial is very much like a jigsaw puzzle. It's not like a mystery novel or CSI or a movie. You're not going to have every loose end tied up and every question answer[ed]. What matters is this: Do you have enough pieces of the puzzle? Do you have enough evidence to believe beyond a reasonable doubt that the defendant is guilty?

*Fuller*, 169 Wn. App. at 827 (alternations in original) (internal quotation marks omitted).  The State then asked the *Fuller* jury if it had "enough pieces of the puzzle, enough evidence to have an abiding belief in the truth of the charge." *Fuller*, 169 Wn. App. at 827 (internal quotation marks omitted).

In *Fuller*, we explained that the State did not improperly quantify the level of certainty necessary to satisfy the beyond a reasonable doubt standard.  169 Wn. App. at 827-28.  "The State did say, however, that the jury could be convinced beyond a reasonable doubt even without 100 percent certainty." *Fuller*, 169 Wn. App. at 827.

Similarly, in *Curtiss*, we held that the prosecutor's puzzle analogy was not improper.  161 Wn. App. at 700–01.  There, the prosecutor stated, "There will come a time when you're putting that puzzle together, and even with pieces missing, you'll be able to say, with some certainty, beyond a reasonable doubt what that puzzle is: The Tacoma Dome." *Curtiss*, 161 Wn. App. at 700.  The court explained that the puzzle analogy did not minimize the State's burden of proof because it did not quantify the level of certainty required to satisfy the beyond a reasonable doubt standard, nor did it minimize or shift the burden of proof to the defendant in the context of the argument as a whole. *Curtiss*, 161 Wn. App. at 700-01.

In *Johnson*, however, we held that the prosecutor's puzzle analogy was improper and that the prejudice was incurable.  158 Wn. App. at 685-86.  The prosecutor analogized the State's burden of proof to a partially completed puzzle, and argued "[y]ou add a *third* piece of the puzzle,

and at this point *even being able to see only half*, you can be assured beyond a reasonable doubt that this is going to be a picture of Tacoma." *Johnson*, 158 Wn. App. at 682 (emphasis added). There, the State's argument improperly quantified the level of certainty required to satisfy its burden of proof, and when combined with other flagrant and ill-intentioned misconduct, despite the court's correct instructions, the prejudice was incurable. *Johnson*, 158 Wn. App. at 685-86.

In *Lindsay*, our Supreme Court explained the key difference between our holdings in *Curtiss* and *Johnson*. In *Curtiss*, the prosecutor's reference to being able to discern the subject of a puzzle with some pieces missing was general, unlike in *Johnson*, where the prosecutor improperly quantified the number of pieces and percentage of completion required for reasonable doubt. *Lindsay*, 180 Wn.2d at 435. In *Lindsay*, the court held that the prosecutor's statement quantifying the standard of proof by using a jigsaw puzzle analogy was improper and prejudicial. 180 Wn.2d at 436. The prosecutor improperly argued that "you put in about 10 more pieces and see this picture of the Space Needle. Now you can be halfway done with that puzzle and you know beyond a reasonable doubt that it's Seattle. You could have 50 percent of those puzzle pieces missing and you know it's Seattle." *Lindsay*, 180 Wn.2d at 436 (internal quotation marks omitted).

Here, the prosecutor went further than what the prosecutor properly argued in *Curtiss*. There, the prosecutor's reference to a puzzle was brief; here, the prosecutor repeatedly used a puzzle analogy. First, the visual presented on the PowerPoint slide comparing the reasonable doubt standard like a "puzzle" conveyed an image to the jury without context. State's PowerPoint Presentation, slide 6. Although not objected to, this argument was improper. *See State v. Salas*, 1 Wn. App. 2d 931, 945, 408 P.3d 383 (2018) (we held that *"*PowerPoint slides should not be used to communicate to the jury a covert message that would be improper if spoken aloud").

11

Second, the prosecutor then argued that the jury should consider the State's burden of proof as a puzzle, and that even though pieces may be missing and the box showing the image may be missing, eventually, the jury could discern what the image was supposed to be. VRP (Nov. 8, 2018) at 2572-74. The prosecutor argued that the number of pieces required was subjective for each juror, and even though "pieces of the puzzle are broken, torn, ripped, or frayed." VRP (Nov. 8, 2018) at 2573. The prosecutor made the same argument during his rebuttal. The prosecutor's analogy to an incomplete puzzle implied that a reasonable doubt may not arise from a lack of evidence. But that is not what the court's instruction stated when it defined reasonable doubt as "one for which a reason exists and may arise from the evidence or lack of evidence." CP at 108.

These arguments misstated the law, trivialized the State's burden of proof, and improperly equated the beyond a reasonable doubt standard to being confident about what is depicted in an incomplete jigsaw puzzle. The puzzle analogy used repeatedly by the prosecutor wrongfully implied that the *jury* was responsible for solving the incomplete jigsaw puzzle. The prosecutor trivialized and misstated the State's burden of proof by using an inaccurate and confusing analogy. The prosecutor came dangerously close to quantifying the beyond a reasonable doubt standard of proof even though he did not *explicitly* place a percentage on how many "puzzle pieces" were necessary for proof beyond a reasonable doubt. But even if the prosecutor did not explicitly quantify the burden of proof, we hold that the puzzle analogy was still improper as used in this case.

B. SPEAK THE TRUTH

Levy-Aldrete next argues that the prosecutor's speak the truth argument, inviting the jury to render a verdict that "reflects the truth," also misstated the State's burden of proof and was improper. We agree and hold that this statement also was improper.

"Speak the truth" arguments are improper. *Lindsay*, 180 Wn.2d at 437; *Emery*, 174 Wn.2d at 760. "'[T]he jury's duty is to determine whether the State has proved its allegations against a defendant beyond a reasonable doubt.'" *Lindsay*, 180 Wn.2d at 437 (quoting *State v. Anderson*, 153 Wn. App. 417, 429, 220 P.3d 1273 (2009)). By telling the jury to "speak the truth," the prosecutor misstated the jury's duty and its own burden of proof. As such, the statement was improper and was contrary to the court's instructions on reasonable doubt.

Although Levy-Aldrete did not object to this statement, it was flagrant and ill-intentioned. There are numerous published cases holding that speak the truth arguments are improper, but the prosecutor disregarded that clear law.

C. EVIDENCE OUTSIDE THE RECORD

Levy-Aldrete next claims that the prosecutor improperly argued evidence outside the record, citing the prosecutor's argument that Levy-Aldrete's self-inflicted cuts should be compared to television characters who try to fool others into believing they were attacked. We hold that this argument referring to evidence outside the record was improper.

A prosecutor can commit reversible misconduct by urging the jury to decide a case based on evidence outside the record. *State v. Pierce*, 169 Wn. App. 533, 553, 280 P.3d 1158 (2012).

The prosecutor argued that the superficial cuts on Levy-Aldrete's face were not consistent with cuts from a Maker's Mark bottle, as Levy-Aldrete claimed. The prosecutor argued to the jury

that television story lines in which a perpetrator inflicts wounds on himself in order to trick the police demonstrated that Levy-Aldrete's wounds were likely also self-inflicted.

The State presented no evidence to support its argument that Levy-Aldrete, taking a cue from television story lines, inflicted his wounds on himself. The prosecutor's reference to television characters was outside the evidence, and it improperly invited the jury to rely on their own knowledge of television dramas to determine whether Levy-Aldrete cut himself to create a fictional intruder. This argument explicitly directed the jury to use their knowledge of outside evidence—and presumably, each juror had different knowledge and basis of understanding—to decide whether Levy-Aldrete's cuts were self-inflicted. We hold that this statement was improper.

Again, Levy-Aldrete did not object to this argument. However, because it is well-settled that prosecutors are prohibited from arguing matters outside the evidence, this is flagrant and ill-intentioned.

D. PREJUDICE

Levy-Aldrete argues that there is a substantial likelihood that these instances of misconduct affected the verdict, any resulting prejudice could not have been cured by an instruction, and that the cumulative effect of these prejudicial errors requires reversal. We agree and hold that Levy-Aldrete has met his burden to show reversible misconduct.

When the defendant did not object, such as here, to the "speak the truth" argument or to argument outside of the evidence, we determine whether the statement was so flagrant and ill-intentioned that no set of instructions could have cured the resulting prejudice. *See Lindsay*, 180 Wn.2d at 430. Repetitive misconduct can have a "cumulative effect." *Lindsay*, 180 Wn.2d at 443 (internal quotation marks omitted). Cumulative error applies when numerous errors deny the

defendant his or her right to a fair trial, "even if each error standing alone would be harmless." *State v. Venegas*, 155 Wn. App. 507, 520, 228 P.3d 813 (2010).

We have already determined that the prosecutor misstated the burden of proof by use of a puzzle analogy, by asking the jurors to "reflect[] that truth" in their verdict, and by arguing evidence outside of the record. VRP (Nov. 8, 2018) at 2619. We look at the effect of each error on the verdict.

The improper puzzle analogy invited the jury to accept the prosecutor's false analogy comparing the beyond a reasonable doubt standard to determining what image is depicted in an incomplete jigsaw puzzle; this argument improperly allowed the jury to think that a lack of evidence was not a basis for reasonable doubt. This improper argument had a substantial likelihood of affecting the verdict.

The "reflect that truth" argument invited the jury to solve the case rather than focusing on whether the State met its beyond a reasonable doubt burden of proof. The timing of this argument increased the prejudice, and no instruction at that time could have been cured the resulting prejudice.

The argument asking the jury to consider evidence outside the record, considered alone, may have been harmless error because absent the cumulative effect of the misconduct, it might have been curable with an instruction. But after arguing that Levy-Aldrete's wounds were self-inflicted, the prosecutor then showed the jury the victim's photograph showing the horrific and significant cuts made on her face with a broken Maker's Mark bottle and asked them to compare those wounds to the superficial cuts on Levy-Aldrete's face. Showing the victim's photograph was entirely proper as that evidence had been admitted, but when combined with asking the jurors

No. 52733-2-II

to consider television characters they had seen wound themselves, the prosecutor could not unring the bell, and we conclude that no instruction could have cured the resulting prejudice.

The cumulative effect of these repeated instances of misconduct were substantially likely to have affected the verdict. Thus, we hold that Levy-Aldrete has met his burden to show reversible prosecutorial misconduct.

## CONCLUSION

We reverse and remand for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, A.C.J.

We concur:

MAXA, J

CRUSER, J.

16