# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>     v.<br><br>DOUGLAS KIRBY,<br><br>                    Respondent, | No.  49162-1-II<br><br>UNPUBLISHED OPINION |

BJORGEN, C.J. — Douglas Kirby appeals his convictions of two counts of first degree child rape and two counts of first degree child molestation and requests reversal of his convictions.

Kirby argues that (1) the prosecution mischaracterized the reasonable doubt standard, thereby violating his right to a fair trial, (2) defense counsel failed to object to the prosecution's mischaracterization of the reasonable doubt standard, which constituted ineffective assistance of counsel, (3) imposing community custody conditions requiring him to submit to plethysmograph testing at the direction of his community corrections officer (CCO) exceeded the statutory

authority of the sentencing court, and (4) the judgment and sentence contain scrivener's errors as to the date of the crime. He also objects to appellate costs because he is indigent.

As to the alleged trial errors, we hold that (1) the prosecution did not mischaracterize the reasonable doubt standard in its closing rebuttal argument, (2) the defense did not render ineffective assistance of counsel when it failed to object, because the prosecution properly characterized the reasonable doubt standard, (3) imposing community custody conditions requiring Kirby to submit to plethysmograph testing at the direction of his CCO exceeded the statutory authority of the sentencing court because the terms of the condition allowed the CCO to order the tests even if not directed by a qualified treatment provider, and (4) the scrivener's errors in Kirby's judgment and sentence necessitate remand for correction. Finally, the State has indicated that it will not seek appellate costs, so we deem them waived.

Accordingly, we affirm Kirby's convictions, but remand to the sentencing court to clarify the plethysmograph condition and to correct the scrivener's errors.

FACTS

The State charged Kirby through its amended information with two counts of first degree child rape and two counts of first degree child molestation.

Before closing arguments, the trial court instructed the jury using Washington's traditional abiding belief instruction, which addresses the reasonable doubt standard. Instruction number 3 informed the jury of the State's burden of proof as follows:

> The defendant has entered a plea of not guilty to the charges. That plea puts in issue every element of the crimes charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt.

A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly and carefully considering all of the evidence or lack of evidence. If, after such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

Verbatim Report of Proceedings (VRP) (May 11, 2016) at 576-77; Clerk's Papers (CP) at 36-37.

The court also instructed the jury as follows:

The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

VRP (May 11, 2016) at 574; CP 34-35.

During the State's rebuttal closing argument, the prosecutor expounded on the burden of proof as follows:

[State]: Mr. Woodrow [defense counsel] hit on a topic I was actually going to hit on as well and that's the instruction for reasonable doubt and it talks about an abiding belief. And it's weird. We talk about marriage or married, we talk about sexual contact or sexual intercourse, things that, frankly, people use in everyday language all the time, but when you hear definitions for those, an abiding belief just sounds like a legal term, right, but that one you don't get a definition for. That's because it's different for each and every one of you, and I'm not going to tell you what it should be for you.

Abiding belief is the basis for a reasonable doubt. For you it may be different than the person next to you, but what it comes down to is do you believe that everything on those checklists that we talked about earlier happened, and if you have that belief, I would submit to you [that] you are convinced beyond a reasonable doubt. And if you are convinced beyond a reasonable doubt, I'm going to ask you to do what your oath and the jury instructions say you have to do, and that's find Douglas Kirby guilty. Thank you.

VRP (May 11, 2016) at 638-39. Kirby did not object to these statements.

3

No. 49162-1-II

The jury returned a guilty verdict on all charges and the court sentenced Kirby to terms of imprisonment and community custody. As a condition of community custody, Kirby was ordered to submit to a sexual deviancy evaluation and to successfully complete any recommended treatment. Additional conditions of community custody were attached in Appendix H, one of which requires Kirby to, among other matters, comply with "polygraph and plethysmograph examinations as directed by the CCO." CP at 24.

All four counts for which Kirby was convicted were charged as occurring between March 5, 2008 and May 22, 2009. At his arraignment, the court noted that the date of the offenses in the first amended information had been amended to reflect the proper dates of the offenses: between March 5, 2008 and May 22, 2009. The to-convict instructions used the same date range. However, the judgment and sentence lists the date of offense for all four charges as January 1, 2008.

Kirby appeals.

ANALYSIS

Kirby argues that the prosecution mischaracterized the reasonable doubt standard in such a flagrant and ill-intentioned manner as to amount to prosecutorial misconduct, misconduct a curative instruction could not obviate. We disagree.

I. PROSECUTORIAL MISCONDUCT

A.    Legal Principles

The Sixth and Fourteenth Amendments to the United States Constitution and article I, sections 3 and 22 of the Washington Constitution guarantee the right to a fair trial. *State v.*

4

*Finch*, 137 Wn.2d 792, 843, 975 P.2d 967 (1999). Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial. *State v. Davenport*, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984).

To establish prosecutorial misconduct, the defendant must prove that the prosecuting attorney's remarks were both improper and prejudicial. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). "In analyzing prejudice, we do not look at the comments in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury." *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008).

Depending on whether the defendant objected to the improper comments, we analyze prejudice in misconduct claims under one of two standards of review. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). If the defendant objected at trial, the defendant need only show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. *Id.* If, however, the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Id.* at 760-61. "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

Examples of circumstances in which courts have generally found misconduct to be

flagrant and ill-intentioned include when the prosecutor: (1) undermines the presumption of innocence by, for example, stating that a defendant is not entitled to the benefit of the doubt, *see Warren*, 165 Wn.2d at 26-27, (2) points out a defendant's or witness's assertion of his or her Fifth Amendment privilege, *see State v. Nelson*, 72 Wn.2d 269, 282-85, 432 P.2d 857 (1967), or (3) inserts racial bias into the proceedings. *State v. Monday*, 171 Wn.2d 667, 680, 257 P.3d 551 (2011).

In addition, a prosecutor who addresses the reasonable doubt standard in closing argument acts improperly by "trivializ[ing] and ultimately fail[ing] to convey the gravity of the State's burden and the jury's role in assessing its case against [the defendant]." *State v. Anderson*, 153 Wn. App. 417, 431, 220 P.3d 1273 (2009). A prosecutor also acts improperly by arguing to the jury that it must find the defendant guilty if it cannot articulate a specific reason for its doubt as to guilt. *State v. Johnson*, 158 Wn. App. 677, 684-85, 243 P.3d 936 (2010). In essence, the State acts improperly when it mischaracterizes the standard as requiring anything less than an abiding belief that the evidence presented establishes the defendant's guilt beyond a reasonable doubt. *See State v. Pirtle*, 127 Wn.2d 628, 657-58, 904 P.2d 245 (1995).

B.      Reasonable Doubt Standard

Kirby claims that the prosecution mischaracterized the reasonable doubt standard, thereby violating his right to a fair trial.

The prosecutor stated, in pertinent part, as follows:

> Abiding belief is the basis for a reasonable doubt. For you it may be different than the person next to you, but what it comes down to is do you believe

> that everything on those checklists that we talked about earlier happened, and if you have that belief, I would submit to you [that] you are convinced beyond a reasonable doubt. And if you are convinced beyond a reasonable doubt, I'm going to ask you to do what your oath and the jury instructions say you have to do, and that's find Douglas Kirby guilty.

VRP (May 11, 2016) at 638-39. Kirby did not object to the prosecutor's statements at trial, but contends on appeal that this argument "distorted and minimized the burden of proof." Br. of Appellant at 7. According to Kirby, the prosecutor "equated proof beyond a reasonable doubt to a mere belief in everything on the checklists." Br. of Appellant at 5 (internal quotation marks omitted).

The prosecutor's statement in the above excerpt that "if you have that belief, I would submit to you [that] you are convinced beyond a reasonable doubt," taken in isolation, might be interpreted as improperly suggesting that any level of belief is the same as belief beyond a reasonable doubt. However, in context, the prosecutor's argument shows that his reference to "belief" in this remark was to an "abiding belief" or a belief sufficient to overcome reasonable doubt. Taken as a whole, the State's argument did not trivialize or minimize the State's burden to a level less than beyond a reasonable doubt.

Additionally, Kirby contends that the prosecutor mischaracterized and distorted the reasonable doubt standard when he stated, "[A]biding belief is the basis for a reasonable doubt." Br. of Appellant at 7. This statement, Kirby argues, "suggested [that] the reasonable doubt standard was something detached from the 'abiding belief.'" *Id*. We recognize that prosecutor's statement could be interpreted as requiring an abiding belief in the *doubt*, which would turn the standard on its head. Nevertheless, a view of the argument as a whole reveals that the prosecutor

7

was talking about an abiding belief that the elements of the crime had been committed, which was proper.

Because we hold the prosecutor properly characterized the reasonable doubt standard, our inquiry into prosecutorial misconduct is at an end. Without any improper actions by the prosecutor, it is unnecessary to examine prejudice or whether any prejudice was curable by an instruction. Under the standards above, Kirby has not shown prosecutorial misconduct.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Kirby argues that he received ineffective assistance of counsel because his attorney failed to object to the portions of closing argument that he claims constituted prosecutorial misconduct. We disagree.

The right to effective assistance of counsel is afforded criminal defendants by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Thomas*, 109 Wn.2d 222, 229, 743 P.2d 816 (1987). We review claims of ineffective assistance de novo. *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 347, 325 P.3d 142 (2014).

To establish ineffective assistance of counsel, Kirby must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If Kirby fails to establish either prong of the test, we need not inquire further. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Deficient performance occurs when counsel's performance falls below an objective

standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). There is a strong presumption of effective assistance, and Kirby bears the burden of rebutting that presumption by showing the lack of a legitimate strategic or tactical reason for the challenged conduct. *McFarland*, 127 Wn.2d at 335-36. Resulting prejudice must also occur, and the appellant must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 335.

As shown above, the State's arguments on its burden of proof under the reasonable doubt standard, taken in context, were not improper. Kirby's attorney did not act deficiently in failing to object to a proper argument. Because both deficient performance and prejudice must be proved to support a successful claim of ineffective assistance of counsel, Kirby's failure to show deficient performance ends our inquiry.

### III. PLETHYSMOGRAPH COMMUNITY CUSTODY CONDITION

Kirby argues that the sentencing court abused its discretion when it ordered him to submit to plethysmograph testing at the direction of his CCO. We hold that the trial court did not abuse its discretion in entering this condition, but remand to the sentencing court to clarify its sentencing order regarding this testing consistently with this opinion.

We review the imposition of community custody conditions for an abuse of discretion. *State v. Johnson*, 184 Wn. App. 777, 779, 340 P.3d 230 (2014). A trial court abuses its discretion if its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). Among the ways a condition is manifestly unreasonable is if it is beyond the court's authority to impose. *Johnson*, 184 Wn. App. at 779.

9

Kirby challenges the community custody condition that will require him to submit to plethysmograph testing at the direction of his CCO. He argues that such testing can be required only if the person ordering it is a qualified treatment provider and it is part of crime-related treatment.

We have previously acknowledged that plethysmograph testing does not serve a monitoring purpose and is only appropriate in the context of a comprehensive evaluation or treatment process. *Johnson*, 184 Wn. App. at 780. As such, a sentencing court may not require plethysmograph testing unless it also requires crime-related treatment for sexual deviancy. *Id.* Further, a CCO's "scope of authority is limited to ordering plethysmograph testing for the purpose of sexual deviancy treatment." *Id.* at 781. Similarly, Division One of our court stated in *State v. Land*, that "[plethysmograph] testing can properly be ordered incident to crime-related treatment by a qualified provider. . . . But it may not be viewed as a routine monitoring tool subject only to the discretion of a community corrections officer." 172 Wn. App. 593, 605, 295 P.3d 782 (2013).

In this case, the trial court required Kirby to submit to plethysmograph testing as directed by the CCO, but also required a sexual deviancy evaluation and the successful competition of any recommended treatment. We recognize that Kirby's CCO may be required to direct plethysmograph testing as part of his sexual deviancy treatment, but also recognize that, under the terms of Kirby's community custody conditions, his CCO could direct plethysmograph testing independently of a treatment provider.

Consistently with *Johnson* and *Land*, we hold that a CCO may direct plethysmograph testing for the purpose of sexual deviancy treatment as required by a qualified treatment provider. Therefore, the trial court did not abuse its discretion, insofar as its sentencing order allowed a CCO to direct Kirby to submit to plethysmograph testing for the purpose of his sexual deviancy treatment. Still, because the sentencing order is unclear, we remand this case to the superior court to amend the sentencing order to clarify that the CCO may only direct plethysmograph testing if a qualified provider requires it as a part of his sexual deviancy treatment.[1]

## IV. SCRIVENER'S ERRORS

Kirby argues that we should remand his case to the sentencing court to correct four scrivener's errors in his judgment and sentence: each count contains an incorrect date of crime. The State concedes that we should remand to correct the wrong date error. We accept the State's concession to correct each counts date of crime.

We are empowered to remand a case to correct a judgment and sentence, even if no prejudice is demonstrated from the scrivener's error. *See State v. Moten*, 95 Wn. App. 927, 929, 976 P.2d 1286 (1999). Kirby's judgment and sentence states he committed the crimes on January 1, 2008, but all four counts for which Kirby was convicted were charged in the amended information as occurring between March 5, 2008 and May 22, 2009.

Accordingly, we remand this case to the sentencing court to correct these scrivener's errors in Kirby's judgment and sentence.

---

[1] This result is consistent with our holding in the unpublished decision in *State v. Nease*, 189 Wn. App. 1048 (2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/45733-4.pdf.

No. 49162-1-II

V. APPELLATE COSTS

Kirby asks this court to exercise its discretion to deny any appellate costs the State requests. The State has stated it will not seek appellate costs.

With this representation by the State, we waive appellate costs.

CONCLUSION

We affirm Kirby's conviction, but remand for the sentencing court to (1) clarify its sentencing order regarding plethysmograph testing consistently with this opinion and (2) correct the scrivener's errors.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

_____

We concur:

_____
WORSWICK, J.

_____
MAXA, J.