IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37079-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| PATRICK J. CROSSGUNS SR, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Patrick Crossguns appeals his convictions of rape and child

molestation of his daughter. He challenges the introduction of evidence of other

purported sexual misconduct beyond the charged incidents and prosecutor's remarks to

the jury that they must decide whether Crossguns or his daughter told the truth. We rule

that the prosecuting attorney committed prejudicial and reversible error when presenting

the jury a false choice.

## FACTS

We gather the facts from trial testimony. We relate the facts in a light favorable to

the State. Most of our narrative comes from the testimony of the alleged victim, Rhonda.

We use pseudonyms for all minors.

In March 2006, Child Protective Services removed Rhonda, born September 11,

2002, from her biological mother's care and placed her with her father, Patrick

Crossguns, in Montana.  Crossguns was married to Marsha Matte, who also contributed

three children to the household.  Crossguns and Matte then bore two children together.

In 2015, Marsha Matte, Patrick Crossguns, and their four youngest children,

including Rhonda then age 12, moved from Montana to Spokane.  Three days later,

Crossguns took Rhonda and his son, Peter, and returned to Montana so that Crossguns

could complete his final two weeks at work.

According to Rhonda, during the return trip to Montana, Patrick Crossguns

touched her inappropriately for the first time.  Peter, with a set of head phones covering

his ears, sat in the car's back seat and played video games.  Crossguns stroked Rhonda's

thigh.  Her father told her, as he stroked, that his mother had similarly rubbed him.

Crossguns told Rhonda she was beautiful.  He touched her shorts over her vagina.  The

fondling continued for thirty minutes to an hour.

While in Montana, Patrick Crossguns slept in between his two children on a large

floor mattress.  On the first night, according to Rhonda, her father placed his hand under

her shorts and underwear and touched her vagina.  A disgusted Rhonda left the mattress

for the living room couch.  Crossguns followed Rhonda to the living room, displayed

pornography on his computer, and told Rhonda to look at the screen.  He stroked her leg

and digitally penetrated her vagina.  She repeatedly told him to stop.  Rhonda felt both

torn and scared.  She loved her father but his conduct rendered her angry, disgusted, and

ashamed.  At the end of the assault, Crossguns told Rhonda he was sorry for his behavior

and he would not repeat the conduct. He added, however, that he was glad to have given Rhonda her first orgasm.

According to Rhonda, on the return to Spokane, Patrick Crossguns continued to touch her inappropriately most nights and during car rides when the two were alone. At night, Crossguns frequently entered Rhonda's basement level bedroom that she shared with her sister Cathy. Cathy slept through the episodes. Crossguns told Rhonda once that he would not touch Cathy because Cathy would report his behavior to her mother.

In early 2016, Marsha Matte's son and Patrick Crossguns' stepson, Bob, resided for three months with the extended Matte and Crossguns family in Spokane. Bob slept in the basement and could hear footsteps when someone went up or down the stairs. Bob often heard Crossguns' footsteps during the night, and, on one occasion, Bob saw Crossguns coming from Rhonda's and Cathy's bedroom sometime between 11:00 p.m. and 2:00 a.m.

One late night, Bob accused Patrick Crossguns of deviously entering the basement and molesting Rhonda. A physical fight erupted. Bob punched Crossguns' jaw and broke the jawbone.

Other family members observed that Patrick Crossguns treated Rhonda differently from his other children. Rhonda's brother, Tim, testified that the father hugged Rhonda differently from his other siblings. Crossguns placed his hands on Rhonda's lower back when hugging. Tim wondered why Crossguns treated Rhonda differently, but he never

voiced concerns.  Other family members observed that Crossguns took Rhonda for lengthy car rides.

In April or May 2016, Rhonda and two of her siblings, Peter and Cathy, sat in the living room watching television.  Patrick Crossguns called Rhonda to come to the basement, where he prepared a resume.  After first ignoring her father, Rhonda, at the urging of her siblings who were annoyed at Crossguns' continued yelling, walked downstairs.  She sat on the bed and assisted her father with spelling words.  According to Rhonda, Crossguns placed his hand on her thigh, while he typed.  After a period of stroking, Crossguns attempted to place his hands inside Rhonda's pants, and she struggled to flee.  Crossguns grabbed Rhonda's legs and forced his hands down her pants.  Rhonda continued to struggle.  Crossguns told his daughter that, if she did not struggle, he would not touch her for a month.  Rhonda continued to struggle anyway, and Crossguns promised not to fondle her for two months if she ceased resisting.  When Rhonda continued to attempt to leave her father's grasp, he claimed he would not touch her for three months if she did not struggle.  Crossguns added that, if Rhonda did not agree to his terms, he would continue to molest her.  Rhonda relented based on the three months promise.  She believed that a period without assaults would ameliorate her depression and reduce her thoughts of suicide.  Crossguns then digitally entered Rhonda's vagina.  After minutes of digital penetration, Crossguns removed his fingers and congratulated Rhonda for now being a woman.

4

During the ensuing three months, Patrick Crossguns attempted to fondle Rhonda despite his pledge. Each time, Rhonda reminded her father of his promise, and he ceased his attempt. But Crossguns began to count, for Rhonda, the remaining days left on his promise.

On August 2, 2016, Marsha Matte, Patrick Crossguns, Peter, and Rhonda watched television in the family residence's living room. Matte exited the house in order to escape the inside heat. Peter joined Matte on the porch, after which Matte heard the volume on the television increase. Matte told Peter to return inside and tell his father to decrease the volume. When Peter returned to the living room, he spied his father's hands inside his sister's pants. According to Rhonda, Crossguns' hand on this occasion went within an inch and a half from her vagina. An upset Peter returned to the porch, where he initially avoided eye contact with his mother. Later, however while the two remained on the porch, Peter reported to his mother that he saw Patrick Crossguns' hands between Rhonda's legs.

Marsha Matte did not confront Patrick Crossguns that evening. RP 383. The next morning, August 3, 2016, Matte asked Rhonda whether her father put his hand inside her pants. Rhonda denied the fondling. Later that day, Matte confronted Crossguns, who denied touching Rhonda. Crossguns asked a nearby Rhonda: "I'm not touching you, am I?" Report of Proceedings (RP) at 387. Rhonda again denied the fondling.

On August 7, 2016, Patrick Crossguns returned to Montana after telling Marsha Matte he planned to sell his horses. He indicated he would return in two weeks. Crossguns never returned to Spokane, and he did not answer calls from his family. After his departure, Marsha Matte again questioned Rhonda whether her father touched her private parts. This time Rhonda described Crossguns's sexual abuse.

PROCEDURE

The State of Washington charged Patrick Crossguns with rape of a child in the second degree and child molestation in the second degree. The State alleged Crossguns raped Rhonda, in the downstairs bedroom "on or about between April 1, 2016 and May 31, 2016," when Crossguns digitally penetrated Rhonda's vagina. Clerk's Papers (CP) at 80. The State alleged that Crossguns molested Rhonda when he inappropriately touched her, while on the living room couch "on or about between August 1, 2016 and August 6, 2016." CP at 80. The State also alleged, for each count, two aggravating circumstances of an ongoing pattern of sexual abuse of the same victim and violation of a position of trust, confidence, or fiduciary responsibility.

Before trial, the State moved for an order permitting introduction of evidence of sexual misconduct of Patrick Crossguns, which conduct did not form the basis for the two charges against him. The State asked to submit evidence of sexual abuse of Rhonda beginning with the trip to Montana in 2015 through the last sexual contact in August of 2016. The State argued that, pursuant to RCW 9.94A.537(4), evidence of prior sexual

misconduct was relevant to support the sentencing aggravating factors. The State also

contended that, even without the aggravating factors, the evidence was admissible to

show Crossguns' lustful disposition toward Rhonda and to demonstrate his motive, plan,

intent, opportunity, and grooming of Rhonda under ER 404(b). According to the State,

the other misconduct constituted the res gestae of the case. Finally, the State maintained

that the evidence of the continuing abuse explained why Rhonda did not earlier disclose

the abuse to another.

As a result of the State's motion to introduce evidence of other sexual misconduct,

Patrick Crossguns moved to bifurcate the trial on the two criminal charges from the trial

on the aggravating factors. He argued that evidence admitted to support the aggravating

factors must comply with requirements outlined in RCW 9.94A.537(4). The statute

authorizes the trial court to conduct a separate proceeding if evidence supporting the

aggravating factor is not part of the res gestae of the underlying crimes. Crossguns

characterized the State's attempt to introduce evidence of other acts as a ruse to introduce

inadmissible propensity evidence. Crossguns added that any probative value of the

evidence outweighed its prejudice to him. He moved to bar introduction of the evidence

because the evidence did not serve any of the purposes listed in ER 404(b) as reasons for

introduction of evidence of other acts of misconduct.

The State resisted Patrick Crossguns' motion to bifurcate the hearing on the

criminal charges from the hearing on the aggravating factors. The State contended, in

part, that the probative value of the evidence of other misconduct substantially outweighed any risk of prejudice. The State also argued that, under RCW 9.94A.535(3)(g), facts supporting an ongoing pattern of abuse of the same victim must be presented to the jury during the trial of the crimes charged.

The trial court admitted, pursuant to ER 404(b), the evidence of other misconduct. In so ruling, the court found that the conduct likely occurred. The evidence served the purpose of showing lustful disposition toward Rhonda, motive, intent, plan, an opportunity to groom the victim, and absence of mistake or accident. The evidence held relevance to such purposes. Finally, the high probative value of the evidence outweighed any unfair prejudice. Because the State could admit the evidence for purposes of proving the underlying crime, bifurcating the hearing on the aggravating factors lacked importance. Therefore, the trial court denied Patrick Crossguns' motion for bifurcation.

As a result of the trial court's evidentiary ruling, Rhonda testified to the first sexual touching that occurred during the car ride to Montana as well as other touching while in Montana. Rhonda testified to the many instances of fondling at night when Patrick Crossguns crept into her Spokane bedroom at night. Family members testified to instances when they saw Crossguns touch Rhonda in a different manner to that of his other children.

During the trial, the defense called Patrick Crossguns' niece and Rhonda's cousin, Susan, who testified that Rhonda told Susan that she lied about the allegations against her

father. Susan memorialized Rhonda's purported confession in a letter, at the urging of

her grandmother, Patsy Crossguns, Crossguns' mother. During trial, Rhonda denied

making any such concession to her cousin. Rhonda averred that, when her cousin

inquired as to why she had accused her father, Rhonda never responded.

During the State's closing argument, the prosecutor told the jury that they must

determine who was telling the truth between the two cousins, Susan or Rhonda:

> [Susan] told you about an alleged conversation that she had with
> [Rhonda] in which [Rhonda] said she was lying, none of this happened.
> You heard from [Rhonda] earlier, that that conversation never happened.
> Somebody's lying. It's your job to determine who's lying. Is [Rhonda]
> lying or is [Susan] lying?
> And that's your job entirely, but here's some things that I think you
> should bear in mind when you discuss that.

RP at 815. The State's attorney also told the jury that it must determine whether Patrick

Crossguns or Rhonda told the truth:

> But, again, you have the testimony of [Rhonda], on one hand, and
> [Patrick Crossguns'] testimony on the other hand. Somebody's not telling
> the truth, and, again, you're going to have to make that decision. Who is
> lying and who is telling the truth.

RP at 817.

During summation, the State addressed the various different purposes for which

the jury could consider the evidence of other sexual misconduct. In turn, as part of the

jury instructions, the trial court instructed the jury as follows:

> Certain evidence has been admitted in this case only for limited
> purposes. This evidence consists of evidence the defendant allegedly

9

> engaged in sexual abuse of [Rhonda] not charged in the information and may be considered by you only for the purpose(s) of determining the defendant's intent, plan, motive, opportunity, absence of mistake or accident, lustful disposition toward [Rhonda], [Rhonda's] state of mind of her delayed disclosure of the alleged abuse, and/or whether the charged conduct was part of an ongoing pattern of sexual abuse and/or involved an abuse of trust or confidence. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

CP at 93.

The jury convicted Patrick Crossguns on both rape of a child in the second degree and child molestation in the second degree. The jury also found that the State established each aggravating circumstance for both counts.

## LAW AND ANALYSIS

On appeal, Patrick Crossguns assigns error to the trial court's admission of evidence of misconduct that did not form the basis of the two charges. In so arguing, he asks that this court abandon Washington's "lustful disposition" doctrine as incompatible with ER 404(b). Crossguns also asserts that the prosecutor engaged in misconduct, during closing statements, when informing the jury that it must decide who is telling the truth and in misstating the missing witness rule. Finally, Crossguns contends that cumulative error requires reversal. We agree with Crossguns that the State's attorney engaged in error that demands reversal of the conviction. For this reason, we do not address any cumulative error. Because the trial court may face the same evidentiary

issues on remand, we address the court's admission of evidence of other misconduct and conclude that the trial court committed no error.

Admission of Prior Acts

*Issue 1: Whether Patrick Crossguns waived any error resulting from admission of evidence of other sexual misconduct?*

*Answer 1: No.*

Before addressing the merits of Patrick Crossguns' assignment of evidentiary error, we must respond to the State's argument that Crossguns partially waived this assignment of error. The State contends that Crossguns did not preserve, before the trial court, any challenge to introduction of evidence of other misconduct except on prejudice grounds. The State argues that Crossguns failed to contest the legitimacy of the purposes asserted by the State to admit the evidence under ER 404(b), but rather challenged the evidence solely on the basis of ER 403. At most, the State argues, Crossguns preserved his argument against admission of res gestae evidence. The State also maintains that Crossguns did not argue to the trial court in favor of abandoning the the lustful disposition doctrine.

An appellate court may refuse to review any claim of error not raised in the trial court. RAP 2.5(a). When the appellant failed to assert the specific objection at trial, he loses the opportunity for review on that basis. *State v. Guloy*, 104 Wn.2d 412, 422, 705

P.2d 1182 (1985). A party may assign evidentiary error on appeal only on a specific ground declared at trial. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

We disagree with the State's reading of the trial court record. Although Patrick Crossguns sought to exclude evidence of other acts of alleged misconduct on the ground of prejudice, he also moved to exclude the evidence because the State would inappropriately use the evidence to show a propensity to commit the crimes. More importantly, he argued that the testimony would serve none of the purposes listed in ER 404(b) as an exception to propensity evidence. Thus, Crossguns did not waive his right to challenge the applicability of ER 404(b).

We agree with the State that Patrick Crossguns did not argue for an abandonment of the lustful disposition doctrine before the trial court. Nevertheless, because of prosecutorial misconduct, we remand this case for a new trial, and the question of the application of the lustful disposition doctrine will probably arise during the new trial. Therefore, we also address Crossguns' request to abandon the doctrine.

*Issue 2: Whether this intermediate appeals court should abandon the lustful disposition doctrine?*

*Answer 2: No.*

The Washington Supreme Court has consistently recognized that evidence of collateral sexual misconduct may be admitted under ER 404(b) when it shows the defendant's lustful disposition directed toward the offended female. *State v. Ray*, 116

Wn.2d 531, 547, 806 P.2d 1220 (1991); *State v. Camarillo*, 115 Wn.2d 60, 70, 794 P.2d 850 (1990); *State v. Ferguson*, 100 Wn.2d 131, 133-34, 667 P.2d 68 (1983). The evidence must be limited to conduct directed to the charged crime's victim so that the evidence does not simply reveal the accused's general sexual proclivities. *State v. Medcalf*, 58 Wn. App. 817, 822-23, 795 P.2d 158 (1990). The Supreme Court has reasoned that a lustful inclination of the accused toward the offended female makes it more probable that the defendant committed the offense charged. *State v. Ferguson*, 100 Wn.2d 131, 134 (1983). The evidence establishes a sexual desire for the particular female. *State v. Ferguson*, 100 Wn.2d at 134. The testimony is admissible even if not corroborated by other evidence. *State v. Ray*, 116 Wn.2d 531, 547 (1991).

One might question the logic behind the lustful disposition doctrine. After all, many men have a lustful disposition to a large population of females or males such that a lustful disposition to the crime victim is nothing more than an expression of general sexual proclivities. Nevertheless, we are bound by Washington Supreme Court precedent. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984). Any abolition of the doctrine must come from the state high court.

*Issue 3: Whether the trial court erred when admitting evidence of uncharged conduct of Patrick Crossguns?*

*Answer 3: No.*

13

Patrick Crossguns solicits our abrogation of the lustful disposition doctrine as a means to the end of challenge to the trial court's admission of evidence of alleged uncharged sexual abuse under ER 404(b). The full text of the rule reads:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(Boldface omitted.)

A trial court must always begin with the presumption that evidence of other bad acts is inadmissible. Along these lines, the State may not admit evidence of other misconduct in order to argue that, when committing the charged crime, the accused acted in conformity to his character and conduct on other occasions. ER 404(b) prohibits admission of evidence to prove a defendant has a criminal propensity. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).

Notwithstanding the presumption of exclusion, ER 404(b) allows admission of evidence of other bad acts if the evidence serves a nonpropensity purpose. The list of other purposes in the second sentence of ER 404(b) is merely illustrative. The burden of demonstrating a proper purpose is on the proponent of the evidence. *State Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012).

The trial court must read ER 404(b) in conjunction with ER 403. *State v. Gunderson*, 181 Wn.2d 916, 923, 337 P.3d 1090 (2014); *State v. Fisher*, 165 Wn.2d 727,

14

745, 202 P.3d 937 (2009). Under ER 403, evidence must be excluded even if relevant, if "its probative value is substantially outweighed by the danger of unfair prejudice." ER 403; *State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986).

The Supreme Court has adopted a four step process to admitting evidence of prior acts of misconduct. The trial court must:

> (1) find by a preponderance of the evidence the misconduct actually occurred, (2) identify the purpose of admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value against the prejudicial effect of the evidence.

*State v. Fisher*, 165 Wn.2d at 745. The trial court must analyze the four elements on the record. *State v. Gunderson*, 181 Wn.2d at 923. On review, we consider bases mentioned by the trial court as well as other proper bases on which we could sustain the trial court's admission of evidence. *State v. Powell*, 126 Wn.2d 244, 259, 893 P.2d 615 (1995).

If the trial court interprets ER 404(b) correctly, we review the trial court's ruling to admit or exclude evidence of misconduct for an abuse of discretion. *State v. Fisher*, 165 Wn.2d at 745; *State v. Gresham*, 173 Wn.2d 405, 419 (2012). A trial court abuses its discretion if the evidentiary ruling is based on untenable grounds or untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Patrick Crossguns' trial court astutely addressed all four required elements before admitting the evidence of other criminal behavior. The court determined by a preponderance of the evidence that uncharged acts of abuse occurred. The trial court

15

determined that the evidence of past sexual conduct was relevant to nonpropensity purposes, including lustful disposition, motive, opportunity, and intent.  Finally, the court, after weighing the evidence and reviewing case law cited by the parties, assessed the probative value as high and as stronger than any risk of unfair prejudice to Crossguns.

The State correctly contends that evidence of other sexual assaults of Rhonda was relevant and admissible to show the aggravating factors of a position of trust and an ongoing pattern of sexual abuse toward the same victim.  RCW 9.94A.535(d)(iv), (g).  For this reason alone, the trial court did not abuse its discretion in admitting the evidence.  But we recall that Patrick Crossguns sought to bifurcate the aggravating factors hearing from the trial on the underlying crime, and the trial court based its evidentiary ruling in part on its denial of the bifurcation request.

The State also correctly contends that evidence of the other sexual assaults was admissible under the lustful disposition doctrine.  For this additional reason, we conclude that the trial court did not abuse its discretion when admitting the testimony of Rhonda and others about Crossguns treatment of his daughter.  Furthermore, we also need not analyze whether the evidence was permissible, under ER 404(b), for other stated State purposes: to show motive, intent, plan, an opportunity to groom the victim, absence of mistake or accident, delay in reporting, or res gestae.  We observe that the lustful disposition doctrine may simply repeat one or more exceptions under ER 404(b) such as intent, motive, common plan, and absence of mistake.

16

Prosecutorial Misconduct

*Issue 4: Whether the State's attorney committed misconduct during closing statement?*

*Answer 4: Yes.*

Patrick Crossguns contends that the prosecuting attorney committed misconduct when he (1) mischaracterized the State's burden of proof and undermined Crossguns' presumption of innocence, and (2) misstated the missing witness doctrine on an issue important to Crossguns' defense theory. The State responds that no misconduct occurred and, even if it did, the defense cannot show that the conduct was flagrant and ill-intentioned. We only address Crossguns' complaint about a mischaracterization of the burden of proof.

To resolve a claim of prosecutorial misconduct, we first inquire whether the prosecutor made improper comments, then, if such comments were made, we inquire as to whether they were prejudicial to the defendant. *State v. Lindsay*, 180 Wn.2d 423, 431, 326 P.3d 125 (2014). Patrick Crossguns bears the burden of proving that the prosecuting attorney's remarks were improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011).

Patrick Crossguns contends that the prosecuting attorney, during summation, presented the jury with a false choice and told them that they must determine that Rhonda lied in order to acquit him. The State responds that Crossguns misreads the record. The

17

State emphasizes that the argument focused on witness credibility, which is permitted. We agree with Crossguns.

When evidence contradicts a defendant's testimony, the prosecutor may argue that the defendant lied and that controverting witnesses told the truth. *State v. McKenzie*, 157 Wn.2d 44, 59, 134 P.3d 221 (2006). Nevertheless, the State may not argue that a jury must find that the State's witnesses lied or are mistaken in order to acquit a defendant. *State v. Fleming*, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996). Such an argument poses a false choice since a jury could conclude it does not know who told the truth and thereby acquit the accused because the State failed to meet its burden of proof beyond a reasonable doubt. A jury could acquit the defendant of the crime even though it never finds that the accusing witness lied or misspoke.

A prosecutor may not present a false choice to the jury. *State v. Miles*, 139 Wn. App. 879, 890, 162 P.3d 1169 (2007). To the extent the prosecutor's argument instructs the jurors that they could find the accused not guilty only if they believed his evidence, the prosecuting attorney commits misconduct. *State v. Miles*, 139 Wn. App. at 890.

In *State v. Fleming* the prosecutor stated during closing argument:

> Ladies and gentlemen of the jury, for you to find the defendants, Derek Lee and Dwight Fleming, not guilty of the crime of rape in the second degree . . . you would have to find either that [victim] has lied about what occurred in that bedroom or that she was confused; essentially that she fantasized what occurred back in that bedroom.

18

*State v. Fleming*, 83 Wn. App. at 213. This court determined that the prosecutor's argument misstated the law and misrepresented both the role of the jury and the burden of proof. The jury would not have need to find that a victim was mistaken or lying in order to acquit. Instead, the jury needed to acquit unless it had an abiding conviction in the truth of her testimony.

In *State v. Johnson*, 158 Wn. App. 677, 243 P.3d 936 (2010), the trial court instructed the jury that the State must prove all elements of the crime beyond a reasonable doubt. The prosecutor told the jury that, to acquit the defendant, the jury needed to find a reason for its doubt in the defendant's guilt and that the jury needed to disbelieve the defendant's testimony. The court held that the argument constituted misconduct since the argument subverted the defendant's presumption of innocence.

In *State v. Miles*, 139 Wn. App. 879 the prosecutor told the jury that the versions of events presented to them were "'mutually exclusive.'" *State v. Miles*, 139 Wn. App. at 889. The prosecutor further intoned:

> What do I mean by that? To simplify it as much as possible, if one is true, the other cannot be, as I'm sure you all know. If the State's witnesses are correct, the defense witnesses could not be and vice versa.

*State v. Miles*, 139 Wn. App. at 889 (internal quotations omitted). The prosecutor told the jurors that they heard two conflicting versions of events and they must determine which version of events was more credible. The prosecutor then reviewed the testimony of the witnesses and argued as to the credibility of each. The court held that the

prosecutor committed misconduct.  The jury could conclude that it did not necessarily

believe Nathaniel Miles or his witness, but not be satisfied beyond a reasonable doubt

that Miles was the person who sold the drugs.

Patrick Crossguns' prosecuting attorney told the jury:

> [Rhonda's cousin Susan] told you about an alleged conversation that
> she had with [Rhonda] in which [Rhonda] said she was lying, none of this
> happened.  You heard from [Rhonda] earlier, that that conversation never
> happened.  Somebody's lying.  *It's your job to determine who's lying.*  Is
> [Rhonda] lying or is [her cousin] lying?

RP at 815 (emphasis added).  The prosecutor repeated this theme when telling the jury

that it must determine whether Crossguns or Rhonda lied:

> But again, you have the testimony of [Rhonda], on one hand, and his
> testimony on the other hand.  Somebody's not telling the truth, and, again,
> *you're going to have to make that decision.*  Who is lying and who is telling
> the truth.  I submit to you that you can't believe what the defendant is
> saying, and here is why . . . .

RP at 817 (emphasis added).

We disagree with the State that the prosecuting attorney, during his summation,

simply addressed the credibility of the witnesses and Patrick Crossguns.  The State's

attorney twice told the jury that it must decide who lied.  Although the State did not

expressly utter the words "you must find Rhonda to have lied to acquit," counsel's

comments strongly implied that it could not acquit Crossguns without determining that

Rhonda prevaricated.  The prosecuting attorney told the jury that its job was to determine

who told the truth.  Since the jury's sole duty was instead to determine if the State proved

20

its case beyond a reasonable doubt, the prosecutor's argument implied that they could

acquit Crossguns only after determining who told the truth. The State thereby indirectly

imposed a burden on Crossguns to prove Rhonda to be a liar. The State diminished

Crossguns' presumption of innocence and lessened its burden to prove guilt beyond a

reasonable doubt.

*Issue 5: Whether the prosecutorial misconduct merits vacation of the guilty*

*verdicts despite trial counsel's failure to object to the State's attorney's remarks?*

*Answer 5: Yes.*

Since we hold that Patrick Crossguns' prosecuting attorney committed

prosecutorial misconduct, we must next measure the extent of the misconduct for the

purpose of determining whether to reverse the convictions. Crossguns' trial counsel

failed to object to the misleading comments of the prosecutor concerning the need to

determine who told the truth. Different rules prevail concerning the nature of the

misconduct the appellant must show to gain a new trial depending on whether defense

counsel objected at trial.

To prevail on appeal on a claim of prosecutorial misconduct when the defense

objected below, the accused must show that the prosecuting attorney's comments were

prejudicial. *State v. Warren*, 165 Wn.2d 17, 26, 195 P.3d 940 (2008); *State v. Yates*, 161

Wn.2d 714, 774, 168 P.3d 359 (2007) *abrogated on other grounds by State v. Gregory*,

192 Wn.2d 1, 427 P.3d 621 (2018). If defense counsel failed to object to the misconduct

21

at trial, the defendant on appeal must show more than some prejudice. We consider the claim of prosecutorial misconduct waived on appeal unless the misconduct is so flagrant and ill-intentioned that it evinces an enduring prejudice the trial court could not have cured by an instruction. *State v. Loughbom*, 196 Wn.2d 64, 74, 470 P.3d 499 (2020); *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). In numerous appeals, a court may encounter difficulty in discerning whether the misconduct is flagrant and ill intentioned or whether the prosecutorial misconduct could have been corrected by a curative instruction. This difficulty results in part from various subsidiary tests employed by the Washington Supreme Court when applying the ill-intentioned standard of review.

Despite the ill-intentioned standard, our Supreme Court has directed us not to delve into the mind of the prosecutor. The Supreme Court has written thrice that we should not focus on the prosecutor's subjective intent in committing misconduct, but instead on whether the defendant received a fair trial in light of the prejudice caused by the violation of existing prosecutorial standards and whether that prejudice could have been cured with a timely objection. *State v. Loughbom*, 196 Wn.2d 64, 75 (2020); *State v. Walker*, 182 Wn.2d 463, 478, 341 P.3d 976 (2015); *State v. Emery*, 174 Wn.2d 741, 762 (2012).

In other circumstances, this court has deemed a prosecutor's erroneous argument to be ill intentioned, flagrant, and unamenable to correction by a curative instruction when a Washington court previously recognized those same arguments as improper in a

22

published opinion. *State v. Johnson*, 158 Wn. App. 677, 685 (2010); *State v. Fleming*, 83 Wn. App. 209, 213-14 (1996). We already discussed *State v. Fleming*. The prosecuting attorney told the jury that, to acquit the defendants of rape, the jury must find that the victim lied or was confused. This court held the misconduct to be flagrant because the prosecutor uttered the argument two years after an opinion proscribing the argument. The court reversed the convictions. In *State v. Johnson*, 158 Wn. App. 677 (2010) and *State v. Miles*, 139 Wn. App. 879 (2007), this court reversed convictions when the prosecuting attorney told the jury it must decide who told the truth or the jury must disbelieve the defendant in order to acquit him.

Our dissenting sister, when concluding that a curative instruction would have sufficed, relies on *State v. Emery*, 174 Wn.2d 741 (2012), wherein the prosecuting attorney told the jury that it must arrive at a reason for doubting the accused's guilt and that it must speak the truth. The state high court refused to reverse because of the lack of an objection to the misstatement. We agree that Patrick Crossguns' appeal, like *State v. Emery*, implicates the State's attempt to switch the burden of proof in a criminal case. Nevertheless, Crossguns' argument concerns the prosecutor presenting a false choice, not a fill in the blank argument. The prosecuting attorney told the jury that it must resolve who told the truth between the victim and the accused, not to speak the truth. As previously observed, two Washington courts have noted the difficulty of curing the

State's tactic of insisting that the jury resolve whether the victim or the accused told the truth.

The State argues that any error could have been cured by an instruction to Patrick Crossguns' jury that they are the sole judges of credibility and that the State bears the burden of proving the charged offense beyond a reasonable doubt. Of course, those two instructions are standard instructions that would have already have been given in Crossguns' trial and would have been given in *State v. Johnson*, *State v. Fleming*, and *State v. Miles*. In *State v. Johnson*, 158 Wn. App. 677 (2010), the court measured the seriousness of the prosecutor's misstatement by determining if a jury instruction could cure any prejudice. This court held that the arguments, despite an accurate jury instruction on the presumption of innocence, constituted flagrant and ill-intentioned misconduct and incurable by a trial court's instruction.

Contrary to the State's argument, two Washington Supreme Court judges have suggested the reviewing court should not engage in the struggle of determining whether an instruction could have cured the misconduct. *State v. Arredondo*, 188 Wn.2d 244, 280, 394 P.3d 348 (2017) (Gonzalez, J. dissenting); *State v. Craig*, 82 Wn.2d 777, 789, 514 P.2d 151 (1973) (Stafford, J. dissenting). The curative instruction rule is based on the presumption that the jury follows the court's instruction. *State v. Emery*, 147 Wn.2d 741, 764 n.14, 278 P.3d 653 (2012). As written by United States Supreme Court Justice Robert Jackson: "The naive assumption that prejudicial effects can be overcome by

24

instructions to the jury . . .  all practicing lawyers know to be unmitigated fiction."

*Krulewitch v. United States*, 336 U.S. 440, 453, 69 S. Ct. 716, 93 L. Ed. 790 (1949)

(Jackson, J. concurring).

The Washington Supreme Court has also employed another test for a new trial that may or may not be consistent with the curative instruction standard.  In analyzing prejudice resulting from prosecutorial misconduct, we do not look at the comments in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury.  *State v. Warren*, 165 Wn.2d 17, 28 (2008); *State v. Yates*, 161 Wn.2d 714, 774 (2007). Recently, the Supreme Court indicated that it would consider a broad context, such as the frequency of improper comments, the intended purpose, the subject, and the type of case to determine whether incurable prejudice occurred.  *State v. Loughbom*, 196 Wn.2d 64, 75 (2020).  When applying this standard, the court usually measures the strength of the State's evidence of guilt.  *State v. Barry*, 183 Wn.2d 297, 303, 352 P.3d 161 (2015).  Nevertheless, in *State v. Loughbom*, the court declined to analyze the evidence to assess whether the State presented overwhelming proof of guilt.

On the one hand, family members testified to special attention given by Patrick Crossguns to Rhonda and to sneaky behavior of Crossguns.  One family member stated he saw Crossguns' hand in Rhonda's pants.  On the other hand, no physical evidence confirmed the guilt of Crossguns.  Rhonda testified that the sister, who slept in the same

room as her, never woke when Crossguns came to their room at night. That sister never testified. One cousin testified that Rhonda confessed to fabricating the allegations.

We note that the trial court committed no error, but yet we remand for a new trial. We do so because any prosecuting attorney should know not to instruct the jury that it must find the victim to be lying. Vindication of an accused's rights should not always depend on the skills of his lawyer and whether his lawyer timely objected to errors by the prosecuting attorney. According to one Supreme Court decision, the failure to object should and will not prevent a reviewing court from protecting a defendant's constitutional right to a fair trial. *State v. Walker*, 182 Wn.2d 463, 477.

CONCLUSION

We reverse Patrick Crossguns' convictions for rape of a child and child molestation. We remand for a new trial on both charges.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, J.

26

No. 37079-8-III

PENNELL, C.J. (dissenting) — I disagree Patrick Crossguns's conviction should be reversed based on prosecutorial misconduct. Important to my analysis is the fact that Mr. Crossguns did not object to the alleged misconduct at the time it occurred. Given the lack of objection, I believe Mr. Crossguns's assignment of error has been waived.

Preserving error through a timely objection is important to the fair administration of justice. A trial court faced with an objection can address an error in a way that minimizes prejudice and reduces the need for an expensive and emotionally-taxing retrial. In addition, by setting strong expectations for error preservation, appellate courts reduce incentives for trial counsel to abuse the appellate process by strategically "'remain[ing] silent'" and failing to object to known errors in order to build a case for appeal. *State v. Swan*, 114 Wn.2d 613, 661, 790 P.2d 610 (1990) (quoting *Jones v. Hogan*, 56 Wn.2d 23, 27, 351 P.2d 153 (1960)).

If a defendant fails to object to prosecutorial misconduct during summation, the rule on appeal is exacting. We will consider the error waived unless the misconduct was so "flagrant and ill-intentioned" that it could not be remedied by a curative instruction. *Id*.

Our Supreme Court has held that an improper false choice argument such as the one[1] alleged here is not the type of misconduct warranting reversal under the flagrant and ill-intentioned standard. *State v. Emery*, 174 Wn.2d 741, 763-64, 278 P.3d 653 (2012). Unlike an appeal to emotions or racial bias, an argument that improperly urges the jury to decide the truth is not inherently inflammatory. *Id.* at 763. Rather, it is a matter that can be "cured by a proper instruction." *Id.* at 764. An objection will give the trial court the opportunity to "explain[] the jury's role and reiterate[] that the State bears the burden of proof and the defendant bears no burden." *Id.*

Consistent with *Emery*, I would find that any misconduct in summation could have been cured by a timely objection. I would therefore find the allegations of prosecutorial misconduct waived and affirm the convictions.

Pennell, C.J.

_____
[1] In closing argument, the prosecutor made only one statement that could be characterized as a false choice argument. This statement pertained to the differences in testimony between the victim and Mr. Crossguns regarding Mr. Crossguns's alleged offense conduct. The prosecutor's statement was a false choice argument because it improperly suggested to the jury that its verdict depended on whether Mr. Crossguns or the victim was telling the truth. The other statement at issue involved a dispute between the victim and her cousin. This was not a false choice argument because it went to the collateral issue of whether the victim had made a prior inconsistent statement. The victim could have been lying about the prior statement and yet telling the truth about Mr. Crossguns's criminal conduct. Accordingly, by stating that the jury needed to decide who was telling the truth, the prosecutor did not suggest that this determination would have controlled the verdict.